[Civ. No. 61757. Second Dist., Div. Two. July 1, 1981.]

HARTFORD ACCIDENT AND INDEMNITY COMPANY,
Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent.
MARCUS KEEL, Real Party in Interest.

**COUNSEL**

Overton, Lyman & Prince, Roger E. Hawkins and Kelley K. Beck for Petitioner.

No appearance for Respondent.

Ralph K. Monkarsh for Real Party in Interest.

**OPINION**

**ROTH, P. J.**—Marcus Keel (Keel) real party in interest (RPI) in this proceeding settled a claim for a property loss insured by Hartford Accident and Indemnity Company (Hartford) petitioner herein on September 26, 1973. On December 13, 1979, Keel filed an action in the Superior Court of California, County of Los Angeles (respondent) against Hartford charging a breach of its contractual duty of good faith. This writ proceeding followed.

The thrust of Keel's unverified complaint is embraced in paragraphs 8 and 9 thereof as follows:

"8. The aggregate actual cash value of the vehicles as of on or about July 15, 1973 was not less than the sum of $74,350.00, and was at all times pertinent hereto, known to defendants and each of them to be not less than the sum of $74,350.00.

"9. Although the actual cash value of the vehicles as of on or about July 15, 1973 was, at all times pertinent hereto, known to the defendants, defendants did not disclose it to plaintiff, and plaintiff became apprised of said actual cash value of the vehicles only during a trial on the criminal charge of arson, respecting the fire in which the vehicles were destroyed, which criminal charge, with the participation of the defendants to some extent not yet fully known to plaintiff, was brought against plaintiff in the County of Los Angeles, State of California."

Keel was tried on a charge of arson and was acquitted on December 16, 1975.

The parties agree that Code of Civil Procedure section 337, subdivision 1 fixes the statute of limitation. In pertinent part it provides: "Within four years: 1. An action upon any contract, obligation or liability founded upon an instrument in writing, except as provided in Section 336a of this code; ...."

The discussion which follows assumes Keel's allegations to be true, except for the suggestion that Hartford was involved in some manner with the criminal prosecution referred to. Such evidence as there is in the record on this facet is to the contrary.[1]

Hartford moved for summary judgment on the ground (a) the filing of the action was two years and three months late on the facts, and (b) on Keel's own admission at least two weeks too late. Its motion was denied. Predicated upon Hartford's verified petition this court issued its writ requiring respondent to show cause why it should not vacate its order and substitute a new one granting Hartford's petition.

---

[1] A report of a claim examiner made to Hartford dated 7/15/73, states: "Investigation reveals that the fire was caused by arson and the police feel it was caused by juveniles .... There is no indication that the fire was started by our insured."

■ Keel relying on *Mize* v. *Reserve Life Ins. Co.* (1975) 48 Cal. App.3d 487 [121 Cal.Rptr. 848], and *Clemmer* v. *Hartford* (1978) 22 Cal.3d 865 [151 Cal.Rptr. 285], justified the delayed filing of his complaint on the theory that the criminal charge of which he was acquitted had tolled the statute of limitations until the judgment of acquittal was entered.

Keel formally claimed the fire loss almost immediately after the fire occurred. It was negotiated over a period of approximately two months and settled by nine separate checks dated variously on September 10, 14, 26, 1973.

There is no evidence which even squints at a showing that Hartford ever considered rejecting Keel's claim by reason of suspicion of arson or any other legal reason. There is no evidence that Keel was dissatisfied with the amount of the settlement at the time it was made.

There is no explanation in the record of why there was a two-year delay in the trial of Keel.

It is clear that Keel although illiterate did a large trucking business and that although nine of his vehicles were destroyed by fire on July 15, 1973, he had as many left with which to continue operation.

Concededly nothing in the above excuses Hartford's breach of high good faith or its failure to advise Keel of its realistic appraisals, which charge we have assumed to be true—but it is most enlightening as to whether Keel had notice during the negotiation for settlement and before he accepted it as to whether he was recovering full value for his loss. In this connection it should be noted that the full breadth of the concealment alleged does not embrace a charge that Keel was truly deceived as to true value by reason of the fact that Hartford didn't tell him what their appraisals showed. In any event Keel admits that he did discover Hartford's reticence to disclose how much the vehicles were worth no later than November 26, 1975. It is admitted by Keel in the answer to the interrogatories quoted in the affidavit of Kelley K. Beck filed in support of the motion for summary judgment that on November 26, 1975, Keel had knowledge of Hartford's files on the subject. The affidavit recites in pertinent part: "17. At the arson trial, Larry Smith, agent for Hartford, and Robert S. Sawtelle, of S. W. Eller Co., testified under oath that the vehicles involved in the fire loss of July 15, 1973, were worth substantially more than the amount Hartford paid on the

policy. Mr. Smith further testified that the reserve set forth on the reserve memo were [*sic*] realistically set and in interoffice memo, dated August 16, 1973, Mr. Smith wrote that the reserve figure, *i.e.*, $75,500.00 was actually low because of the 'run-down' condition of the vehicles. Investigation is still continuing and additional facts will be submitted to the interrogator upon their receipt."

We know of no statute or rule of law which requires a person to delay filing a claim for insurance validly contracted for because it is anticipated such claim may be denied on a suspicion of arson or by reason of any anticipated defense the insurer may assert. The fact is Keel did not wait. He filed and settled his claim. If he subsequently concluded as he apparently did, that Hartford had violated a good faith duty to him in fixing the value of the insured vehicles he was, as any reasonable person would have been, sufficiently alerted in ample time before the criminal trial was commenced in 1975, and on other occasions during the trial, to avail himself of making a claim for the alleged difference within a four-year period.[2]

The admitted date of discovery is November 26, 1975. Accepting that date as the date of discovery Keel had four years allowed by the applicable statute of limitations (Code Civ. Proc., § 337, subd. 1) within which to bring his action unless as he contends the four-year period was further extended by *Mize* and *Clemmer*.

*Mize, supra*, 48 Cal.App.3d 487, relied upon by Keel to toll the statute of limitations beyond the four-year period states at page 492: "It is true, as a general rule, that a cause of action may be maintained thereon and that the statute of limitations begins to run at that time. (*Record Machine & Tool Co.* v. *Pageman Holding Corp.*, 172 Cal. App.2d 164, 174 . . . . ) But, as stated by Justice Traynor in *Bollinger* v.

---

[2]It is difficult to assume that the owner of a fleet of trucks, all of which were insured did not know the reasonable market value of those which were destroyed by fire especially in view of Keel's failure to allege that he was deceived by Hartford's offer and would not have made the settlement of his claim were it not for the failure of Hartford to advise him of its appraisal of the value of the vehicles which was more than the offer he accepted. In addition having promptly filed his claim if Hartford by reason of the tenuous allegation to the effect that it was in some way connected with the criminal charges of arson or for any other such tenuous reason had refused to promptly negotiate for payment of his claim, Hartford would have subjected itself to a solid claim which Keel could make for bad faith liability and for punitive damages as a consequence. In addition there is substantial evidence in the record that Keel did know or as a reasonably prudent person knew or should have known months before November 26, 1975, about all the information Hartford had on the subject of the value of the vehicles.

*National Fire Ins. Co.*, 25 Cal.2d 399, at page 411 ...: 'Statutes of limitations are not so rigid as they are sometimes regarded. Under certain circumstances property rights or immunities may be acquired as a result of the running of the statutory period, but the period will be extended or tolled by the occurrence of certain events, which may be the subject of conflicting evidence, such as absence from the state or disability. (Code Civ. Proc., § 351 et seq.) It is established that the running of the statute of limitations may be suspended by causes not mentioned in the statute itself. (*Braun* v. *Sauerwein*, 10 Wall. (77 U.S.) 218, 223 ...; *Collins* v. *Woodworth*, 109 F.2d 628, 629.) It is settled in this state that fraudulent concealment by the defendant of the facts upon which a cause of action is based (*Kimball* v. *Pacific Gas & Elec. Co.*, 220 Cal. 203 ...) or mistake as to the facts constituting the cause of action (*Davis etc. Co.* v. *Advance etc. Works, Inc.*, 38 Cal.App.2d 270 ...; see 16 Cal.Jur. 505) will prevent the running of the period until discovery. Principles of equity and justice, which moved this court in the *Kimball* case, *supra*, to grant relief are likewise controlling here. ... It is sufficient to hold that the equitable considerations that justify relief in this case are applicable whether defendant violated a legal duty in failing to disclose its intention to set up this technical defense, or whether it is now merely seeking the aid of a court in sustaining a plea that would enable it to obtain an unconscionable advantage and enforce a forfeiture.'" (See fn. 2.)

In *Mize* the administrator of an estate brought an action against an insurer to recover amounts specified in two insurance policies on the ground that the heirs of the estate were entitled to those benefits rather than the beneficiary of the policies as the beneficiary was the person who had murdered the insured. The insured was murdered by the beneficiary on November 12, 1963. The administrator brought his action on January 11, 1969. The insurance company defended on the ground there was a four-year limitation citing Code of Civil Procedure section 343. However, on November 21, 1963, nine days after the murder, the administrator advised the insurer of its position and kept insurer continuously advised thereof until the named beneficiary was tried and convicted of the murder he had committed. The position of the insurer was further complicated by the fact that the named beneficiary, i.e., the murderer, had also filed a claim. As the court in *Mize* pointed out, there was no eyewitness to the shooting and the administrator was in no position to file a complaint until a disposition of the criminal charge had been made.

Finally, on the facts at bench, the letter and the spirit of the *Mize* doctrine quoted above have been complied with. Keel had the full benefit of a complete four years from the date of discovery, to wit, November 26, 1975. If he had been completely knowledgeable the day after he had made his settlement with Hartford, he would have had no more time within which to bring his action than he admits he did have.

We do not discuss *Clemmer*. It discusses the doctrine of estoppel which has no application to the facts at bench.

Let a peremptory writ issue. Respondent court is directed to vacate its judgment denying summary judgment and to substitute therefor an order granting summary judgment.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied July 29, 1981, and the petition of real party in interest for a hearing by the Supreme Court was denied September 23, 1981. Bird, C. J., was of the opinion that the petition should be granted.