Ribhi **OTHMAN** and Yusif. H. **Mashni,** individually, and doing business as **E–Z Market, a partnership, Plaintiffs/Appellants,**

v.

**GLOBE INDEMNITY COMPANY,** Defendant/Appellee.

No. 83–2075.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 13, 1984.

Decided May 13, 1985.

Victoria J. De Goff, De Goff & Sherman, Berkeley, Cal., for plaintiffs/appellants.

James A. Reichman, Cooley, Godward, Castro, Huddleson & Tatum, San Francisco, Cal., for defendant/appellee.

Before PHILLIPS,[*] FLETCHER and REINHARDT, Circuit Judges.

FLETCHER, Circuit Judge:

Plaintiffs Othman and Mashni (Othman) appeal an adverse directed verdict on their causes of action against Globe Indemnity Co. (Globe) for bad faith denial of insurance coverage, intentional infliction of emotional distress, and punitive damages, all resulting from Globe's denial of a claim under a fire insurance policy.[1] Because the complaint names "Doe" defendants, we raise *sua sponte* the issue of whether diversity jurisdiction exists.[2]

---

[*] Hon. Harry Phillips, Senior United States Circuit Judge for the Sixth Circuit, sitting by designation.

1. Globe does not appeal the jury verdict finding coverage under the insurance policy and awarding over $170,000 in damages.

2. It is well settled that jurisdiction cannot be conferred on the federal courts by consent. *See Mitchell v. Maurer*, 293 U.S. 237, 244, 55 S.Ct. 162, 165, 79 L.Ed. 338 (1934). This court has an independent duty to satisfy itself of its jurisdiction and that of the lower court. *Id.*

A defendant must ordinarily remove a case to federal court within thirty days of receipt of the complaint. 28 U.S.C. § 1446(b)(1982). If the case is not initially removable, it must be removed within thirty days of receipt of a pleading from which it may be ascertained that the case is removable. *Id.*

California law permits a plaintiff to plead a "Doe" defendant when she is ignorant of the name of a defendant. *See* Cal.Civ.Proc.Code § 474 (West 1979). The purpose of this procedure is to toll the statute of limitations against such a person and allow his name to be entered later, usually after discovery, when his identity and capacity are ascertained. The problem for federal jurisdiction is created, however, because Doe pleading has become so commonplace in California that the cautious attorney pleads Does to protect herself against the possibility that other defendants may be discovered. Because Doe defendants are, by their very nature, unspecified, a federal court is unable to determine on a petition for removal whether one or more of the persons who might be Does are residents of the same state as plaintiff. *See infra* note 6.

Although the district court initially should not have allowed removal, we find that it had jurisdiction over the case at the time of final judgment, and thus, jurisdiction exists in this court. Reaching the merits, we affirm in part and reverse in part.

## I

### FACTS

Othman's supermarket was destroyed by fire on October 25, 1976. All of the evidence pointed towards arson. In addition, several facts raised suspicions that Othman had set the fire himself: the burglar alarm was not on the night of the fire; inventory had been increased to an unusually high level and had been purchased with cash; insurance coverage had been recently increased; and Othman had been having financial trouble. Othman made a claim for the loss under a fire insurance and business interruption policy issued by Globe.[3]

Globe promptly hired a private investigator, Nye, to determine the cause of the fire. Although Nye appears to have done a thorough investigation, Othman alleges that Nye did little more than review the already complete investigation done by the civil authorities. Pursuant to policy provisions providing for an examination of the claimants under oath, Globe's lawyers deposed Othman and Mashni. Globe also requested the production of various documents relating to the claim. At the examination, Othman, on his attorney's advice, refused to produce certain documents and to answer certain questions, most of which related to the circumstances of the fire and Othman's personal financial condition.

Thereafter, the parties' lawyers exchanged correspondence, and some but not all of the requested documents were produced. Finally, on May 24, 1977, Globe denied the claim on the basis of the insured's failure to cooperate with the examination and to produce relevant requested documents.

At this point, Othman got a new lawyer, Barbagelata, who began a new round of correspondence with Globe's lawyer, Hartwell, that continued through the summer and fall of 1977. Finally, on January 11, 1978, Barbagelata stated for the first time that he had assembled the requested materials.

■ On February 3, 1978, not having received a response to Barbagelata's tender of materials, Barbagelata's associate wrote Globe's lawyers and informed them that if they did not respond within five days Othman would proceed with a lawsuit. On February 17, 1978, Hartwell responded that Globe would not revoke its denial because the claims were now barred by the one-year statute of limitations. Fortunately for Othman, in October, a few days before the statute ran, Barbagelata had filed, but not served, his complaint.[4]

Globe removed the case from state court to federal district court in the Northern District of California. The district court raised *sua sponte* the issue of whether it had diversity jurisdiction because of the presence of Doe defendants. Plaintiff's attorney filed an affidavit stating that he had discovered no Does and that Does had been named according to standard California practice as a precautionary matter only. The court, satisfied that federal jurisdiction

---

**3.** This discussion should not be taken as an indication that no contrary evidence existed. Othman claimed that night, denied that he was having financial trouble and explained the other items. The jury later found that he did not set the fire. *See infra* note 5.

**4.** The parties dispute whether, under California law, the statute of limitations would have actually run at this time. Globe argues extensively that Barbagelata's conduct in filing the complaint without serving it or notifying Globe of it was somehow improper and that Globe cannot

be guilty of bad faith conduct thereafter. We suggest only that the jury could find that such conduct was the prudent action of a careful attorney acting to preserve his client's rights. We agree with the district court that the filing of the complaint did not make Globe and Othman adversaries so as to eliminate Globe's duty to consider the insured's interests on a level equal to its own and to inquire fully into any possible basis that might support the insured's claim. *See Egan v. Mutual of Omaha Insurance Co.,* 24 Cal.3d 809, 819, 620 P.2d 141, 169 Cal.Rptr. 691, *cert. denied,* 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980).

existed, retained the case, later transferring it to the Eastern District of California on a motion for a change of venue. At the close of plaintiff's case, the district court directed a verdict against Othman on the bad faith, intentional infliction of emotional distress, and punitive damage claims, ruling that plaintiff had not brought forward substantial evidence that would allow these claims to go to the jury. On the remaining causes of action for liability under the policy, the jury rendered a verdict in favor of plaintiffs, answering four special interroga-

**5.** The special interrogatories and the jury's responses were as follows:
1. Did plaintiffs unreasonably refuse to submit to an examination under oath or unreasonably refuse to produce for examination all books of account, bills, invoices and other vouchers?
 YES ___ NO X
2. Did plaintiffs either individually or with another intentionally cause the insured property to be burned?
 YES ___ NO X
3. Did plaintiffs knowingly and wilfully file a false proof of loss with intent to defraud the insurance company?
 YES ___ NO X
4. Did plaintiffs intentionally swear falsely knowing the falsity thereof as to any material fact or knowingly and intentionally conceal a material fact relating to such insurance, fire, and/or claim arising out of said fire with intent to defraud the insurance company?
 YES ___ NO X

**6.** For example, in *Molnar v. National Broadcasting Co.,* 231 F.2d 684 (9th Cir.1956), we affirmed the trial court's dismissal of the action because the plaintiff failed to make an affirmative showing that *none* of the Does was a California resident, even though he pled that each defendant was a Delaware resident. We articulated the following rationale:

> Plaintiff alleges there were actual persons thus joined as defendants under fictitious designations, but she does not describe them or make any allegation about the respective function of each or the connection of each with the accident. It is clear, in the absence of this identification or connection or name, that the allegation of citizenship in Delaware is illusory. It was impossible for the court to say that defendants thus joined were not indispensable from the face of the complaint. At the stage where the action of the court took place, the matter must have been viewed upon the allegations of the complaint alone. Allegations founding jurisdiction of a federal court must be precise.

*Id.*

tories in their favor, and awarding them $170,756.21.[5]

## II

### JURISDICTION

■ We raise *sua sponte* the issue of whether we have jurisdiction over this case because of the presence of "Doe" defendants, who ordinarily destroy diversity jurisdiction.[6] Although the circumstances under which an action including "Doe" defendants may be removed to federal court is not entirely clear in this circuit,[7] we need

Also, in *Garter-Bare Co. v. Munsingwear, Inc.,* 622 F.2d 416, 423 (9th Cir.1980), one count, based on diversity jurisdiction, charged Munsingwear and several Doe defendants with conspiracy. Because the Does were not described in any way, we held no jurisdiction existed over that claim, relying on *Molnar* and *Fifty Associates v. Prudential Insurance Co. of America,* 446 F.2d 1187, 1191 (9th Cir.1970) (ambiguity about Does destroys jurisdiction).

**7.** In *Southern Pacific Co. v. Haight,* 126 F.2d 900, 904 (9th Cir.), *cert. denied,* 317 U.S. 676, 63 S.Ct. 154, 87 L.Ed. 542 (1942), a suit naming fictitious defendants was begun in state court and removed on the day of trial. We upheld jurisdiction, based on the rationale that the Does had been constructively severed from the action before it was removed. In *Preaseau v. Prudential Insurance Co. of America,* 591 F.2d 74, 77–78 n. 2 (9th Cir.1979), we held that removal on the date of trial was proper because the Does had been dismissed at that time. The issue was timeliness, and by allowing removal at that late date, the court held that the presence of the Does prevented jurisdiction until severance. *Id.*

In contrast, *Chism v. National Heritage Life Insurance Co.,* 637 F.2d 1328 (9th Cir.1981), allowed removal merely because the plaintiff named Does without charging any allegations against them. We refused to remand, stating "[t]he Doe defendants cannot destroy diversity in this case because the complaint asserts no claim of any kind against them or any of them ... [and] [i]t would be improper to remand to state court because the complaint fails to state any cause of action against any Doe defendant," *id.* at 1330, following *Grigg v. Southern Pacific Co.,* 246 F.2d 613 (9th Cir.1957) and the line of district court cases disapproved in *Preaseau.* And, in *Hartwell Corp. v. Boeing Co.,* 678 F.2d 842 (9th Cir.1982), the panel followed the same line of district court cases disapproved in *Preaseau* and sought to distinguish *Preaseau* on specificity grounds despite the language in *Preaseau* stating: "We believe that the district courts have misread the *Haight-Grigg* line of decisions in

not make that determination here, because any jurisdictional defect is cured. *See Grubbs v. General Electric Credit Corp.,* 405 U.S. 699, 92 S.Ct. 1344, 31 L.Ed.2d 612 (1972). If a state action includes non-diverse parties, it may not be removed until those parties have been dismissed. *American Car & Foundry Co. v. Kettelhake,* 236 U.S. 311, 35 S.Ct. 355, 59 L.Ed. 594 (1915). Here, the Does were not dismissed before removal. However, the Supreme Court has held that:

> where after removal a case is tried on the merits without objection and the federal court enters judgment, the issue in subsequent proceedings on appeal is not whether the case was properly removed, but whether the federal district court would have had original jurisdiction of the case had it been filed in that court.

*Grubbs,* 405 U.S. at 702, 92 S.Ct. at 1347.

■ The crucial question, then, is whether the district court would have had original jurisdiction. Generally, Doe pleading is improper in federal court and the mere presence of Does in a complaint requires dismissal if jurisdiction is based solely on diversity. *See Garter-Bare Co. v. Munsingwear, Inc.,* 622 F.2d 416, 423 (9th Cir.1980); *Fifty Associates v. Prudential Insurance Co. of America,* 446 F.2d 1187, 1191 (9th Cir.1970); *Molnar v. National Broadcasting Co.,* 231 F.2d 684 (9th Cir. 1956). However, had the case been filed originally in federal court, the court could allow the jurisdictional defect to be cured. Accordingly, the district court could have had proper original jurisdiction. A court may dismiss non-diverse defendants in order to preserve jurisdiction if they are not indispensable parties. *Inecon Agricorporation v. Tribal Farms, Inc.,* 656 F.2d 498, 500 (9th Cir.1981). Although the district court never formally dismissed the Doe defendants, it could have, and this court may now do so if warranted. *Ross v. International Brotherhood of Electrical Workers,* 634 F.2d 453, 456–57 (9th Cir. 1980). When proceedings began in the district court, Othman was not aware of the existence of any actual Doe defendant. No actual persons as substitutes for Does were ever joined, and Othman has stated to this court that there is no objection to dismissing the Does. Accordingly, the Does are not indispensable parties and served no other purpose than protecting the plaintiffs under California pleading practice. Under these circumstances, the Does should be and are now dismissed, and consequently jurisdiction is proper in this court. *See id.* at 457.

### III

### STANDARD OF REVIEW

■ In determining the propriety of a directed verdict, this court has the same role as the court below. *See Shakey's Inc. v. Covalt,* 704 F.2d 426, 430 (9th Cir.1983). A directed verdict is proper if the evidence permits only one reasonable conclusion. *Id.* The court must examine all the evidence in the light most favorable to the nonmoving party to decide whether there is substantial evidence that could support a finding in favor of that party. *See Browne v. McDonnell Douglas Corp.,* 698 F.2d 370, 371 (9th Cir.1982), *cert. denied,* 461 U.S. 930, 103 S.Ct. 2092, 77 L.Ed.2d 301 (1983). Federal law guides this determination. *Id.*

### IV

### BAD FAITH CLAIMS

Othman's allegations of bad faith arise primarily in three areas: Globe's investigation of the fire, Globe's initial denial of the claim on the basis of Othman's failure to provide all of the information requested at the examinations, and Globe's second denial of the claim, with a note that suit was barred because the statute of limitations had run after promising reconsideration. We find that Othman presented enough evidence of bad faith on the part of Globe in respect to the second denial to permit that claim to go to the jury.

making a distinction according to the degree of identification of Does in complaints." *Preaseau,*

591 F.2d at 77 n. 2.

## A. The Duty of Good Faith and Fair Dealing.

A covenant of good faith and fair dealing is a part of every insurance contract in California, and requires an insurer to deal in good faith and fairly with its insured in handling an insured's claim against it. *See Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 510 P.2d 1032, 1037, 108 Cal.Rptr. 480, 485 (1973). The insurer is obligated to give the interests of the insured at least as much consideration as it gives its own interests and not to withhold payment of claims unreasonably. *See Silberg v. California Life Insurance Co.*, 11 Cal.3d 452, 460, 521 P.2d 1103, 1109, 113 Cal.Rptr. 711, 717 (1974). This duty is not contractual, but is imposed by law, and its breach constitutes a tort. *See Gruenberg*, 9 Cal.3d at 574, 510 P.2d at 1037, 108 Cal.Rptr. at 485.

To be sure, a similar duty to act in good faith is imposed upon the insured, for "neither party [may] do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & General Insurance Co.*, 50 Cal.2d 654, 658, 328 P.2d 198, 200 (1958). Nonetheless, a breach of a duty by one party does not excuse the duty of good faith and fair dealing owing by the other—the duty of good faith and fair dealing is absolute, not conditional, and exists independent of any contractual conditions between the parties. *See Gruenberg*, 9 Cal.3d at 578, 510 P.2d at 1040, 108 Cal. Rptr. at 488. In light of these general principles of California law, we turn to an examination of the specific facts of this case.

## B. Globe's Investigation.

We find no substantial evidence that Globe's investigation was not reasonably thorough and prompt. Globe promptly dispatched an investigator, Nye, and set up a reserve to cover the claimed loss.[8] Nye reviewed all of the investigations done by the civil authorities and it is doubtful he could have added much to those investigations. Still, Othman relies on *Egan v. Mutual of Omaha Insurance Co.*, 24 Cal.3d 809, 819, 620 P.2d 141, 145, 169 Cal.Rptr. 691, 695 (1979), *cert. denied*, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980), for the principle that the insurer must fully inquire into any possible basis that might support the insured's claim, and alleges that Nye failed to make such a full inquiry. While we recognize that Globe's investigation focused primarily on whether Othman set the fire, we do not find that this violates the principle of *Egan* because that issue was the sole unresolved question about the claim. In *Egan* the insurer made no effort to contact the insured's physicians whose opinions were obviously material to the appraisal of a disability claim. *Id.* at 817, 620 P.2d at 144, 169 Cal.Rptr. at 694. By contrast, Nye contacted the persons who had relevant information and naturally focused his investigation on the material unsolved question—who set the fire. Although in hindsight we may perhaps

---

**8.** The district court found,

The first thing that they did was to promptly investigate the loss, there's no denial of that. They promptly provided the plaintiffs with loss claim forms. They dealt fairly and reasonably with the claims—with the claims man hired by the plaintiffs, these are all undisputed, everything that I've said so far is undisputed. They promptly investigated the loss, they sent their people out there, they promptly provided the plaintiffs with their loss claim forms and the claims man himself, Mr. Pettitt, stated into the record that he felt that they had dealt fairly and reasonably with him. As a matter of fact, they even told him that they would give him an extension if he needed more time to complete and file his proof of loss on behalf of the plaintiffs. Now,

the fact they had no intention—no initial intention of denying the loss is reflected—in other words, that they didn't start out having it fixed in their mind, and their feet in cement that they were going to deny the loss is reflected by the fact the initial investigation report, reported a complete loss, they figured it was a complete loss and the company was advised to set aside the limits of the policy as a reserve. Now, at that point there was no suggestion that they—to use your language, Mr. Barbagelata, that they set right out with the intention of wanting to deny the claim and that they were then bound upon an investigation that would substantiate and would support the position that they had taken to deny the claim.

think of avenues not fully explored, *see Austero v. National Casualty Co.,* 84 Cal. App.3d 1, 32, 148 Cal.Rptr. 653 (1978), we cannot say that Globe failed to investigate the claim thoroughly or investigated in a manner that indicated its goal was to secure facts to deny coverage.

### C. *The Initial Denial of the Claim.*

Globe denied the claim initially because Othman failed to cooperate fully with Globe's request for examination under oath as required by the insurance policy. Othman argues that under *Gruenberg* his alleged failure to comply with the examination clause did not excuse Globe's duty of good faith. We agree, *see Gruenberg,* 9 Cal.3d at 577–78, 510 P.2d at 1039–40, 108 Cal.Rptr. at 487–88, but it does not necessarily follow that the duty was violated. An insurer may deny coverage on the basis of the insured's refusal to cooperate if it is substantially prejudiced by the refusal. *Id.* at 577, n. 8, 510 P.2d at 1039, n. 8, 108 Cal.Rptr. at 487, n. 8; *Robinson v. National Automobile & Casualty Insurance Co.,* 132 Cal.App.2d 709, 282 P.2d 930 (1955). In *Robinson,* the court held that prior insurance history of an insured was material information and that a refusal to answer questions relating to acquisition of a safe deposit box, acquisition of cash for the reacquisition of jewelry, and various matters relating to the insured's proceedings was material.

The information that Othman refused to furnish was in many respects similar to that in *Robinson:* bank records, financial condition, source of the cash to acquire the abnormal inventory. The information was material. Without it, Globe lacked relevant information that might help to prove who set the fire. Upon a review of the record as a whole, we find no substantial evidence that Globe did not have a good faith belief that Othman may have set the fire.

This case is similar to *Blake v. Aetna Life Insurance Co.,* 99 Cal.App.3d 901, 160 Cal.Rptr. 528 (1979). In *Blake* the plaintiff claimed that Aetna failed in bad faith to pay under a double indemnity clause of an insurance policy. Aetna, however, had overwhelming evidence that pointed to the *probability* of suicide, *see Blake,* 99 Cal. App.3d at 920, 160 Cal.Rptr. at 539, but recognized that this was a case in which no one would ever know for certain what happened. The court observed that Aetna did not deny coverage, but continued to investigate. The court found no bad faith because under the policy the plaintiff had the burden of proving that the death was caused by an accident and not by suicide. *See Blake,* 99 Cal.App.3d at 924, 160 Cal. Rptr. at 541.

Also similar is *Austero,* in which the insurer denied coverage under a disability policy because the plaintiff's policy had lapsed and most medical opinions indicated lack of disability. Yet, "[t]here was a continuing effort by the insurer, via requests for information directed to the plaintiff which went unanswered, ... to determine if plaintiff performed the ... duties of his profession." 84 Cal.App.3d at 35, 148 Cal. Rptr. 653. The court therefore found no bad faith in the insurer's denial.

In both *Austero* and *Blake,* the court emphasized that the insurer agreed to reconsider its denial and thoroughly investigated the case, as did Globe in this case. *See id.; Blake,* 99 Cal.App.3d at 924, 160 Cal.Rptr. at 542. The *Austero* court, on rehearing, clearly rejected the suggestion that insurers deny claims in first-party cases at their own risk; rather, the test is whether the insurer's conduct is unreasonable. *See Austero,* 84 Cal.App.3d at 37, 148 Cal.Rptr. 653. The *Blake* court observed, "it was not unreasonable for Aetna to take the position at any given time before trial that good faith doubts as to whether the death was an accident or a suicide should be resolved against the claimant." *Blake,* 99 Cal.App.3d at 924, 160 Cal.Rptr. at 541.

In this case, Globe did agree to reconsider its claim when plaintiff's new attorney agreed to provide the requested information. Viewed in conjunction with the reasonableness of the investigation and plaintiff's refusal to cooperate, Globe's conduct to this point was not in bad faith. We now turn to the events surrounding the reconsideration.

### D. *The Denial of Reconsideration.*

The most troubling issue is Globe's denial of reconsideration of Othman's claim. After Globe's initial denial of Othman's claim on May 24, 1977, Othman retained a new attorney, Barbegelata, on June 10, 1977. Barbagelata wrote to Hartwell on June 10, 1977, stating that the reasons for the claim denial were unclear. On July 21 Hartwell responded, as he always had, that the claim was denied because of Othman's noncompliance with the examination requirement. Barbagelata responded on September 1 offering to provide information. Hartwell then responded on September 19 that he would discuss the matter with Globe and on September 26 told Barbagelata what information Globe wanted and had previously requested. Hartwell testified at trial that his letter of September 26 was intended as an offer to reconsider if Barbagelata provided the requested information.

On November 10, 1977, Barbagelata's associate wrote to Hartwell to report that they were in the process of obtaining the requested documentation. Two months later, on January 11, 1978, Barbagelata's associate told Hartwell by letter that most of the information had been obtained and that they should agree on a date for the examination of Othman.

Hartwell was in trial at the time so his secretary replied that he would contact Barbagelata's office as soon as possible. The next letter from Barbagelata's associate was dated February 3, 1978, and told Hartwell that they would proceed with a lawsuit if Hartwell did not respond in five days. On February 17, 1978, Hartwell, after consulting with Globe, sent Barbagelata the following letter:

> Royal Globe has advised me that it does not wish to revoke its denial of the claims of the insured of which they were advised by letter dated May 24, 1977.
>
> Any claims of the insureds under the policy are barred for failure to bring suit within one year from the inception of the loss as set forth in the California standard form fire insurance policy.

 Although it is not entirely clear when the statute of limitations on an insurance contract runs in California,[9] a reasonable insurer is entitled to rely on the statute in denying coverage, however harsh that reliance may be.[10] But whether Globe

---

9. *See supra* note 4; *see also Murphy v. Allstate Insurance Co.,* 83 Cal.App.3d 38, 147 Cal.Rptr. 565 (1978) (bad faith action not action "on the policy" and one-year statute does not apply); *Richardson v. Allstate Insurance Co.,* 117 Cal. App.3d 8, 172 Cal.Rptr. 423 (1981) (two-year statute applies for bad faith action); *Hartford Accident & Indemnity Co. v. Superior Court,* 121 Cal.App.3d 249, 175 Cal.Rptr. 282 (1981) (statute runs from discovery of insured's concealment of facts).

10. The district court observed:
 [T]he principal issue in the case boils down to the question of whether the defendants were guilty of any fraudulent, outrageous, or malicious conduct against the plaintiffs, or whether they dealt with them unfairly by continuing after May 24th, 1977 to deal and correspond with the plaintiffs for the purpose of acquiring or viewing the materials they sought, receiving offers of cooperation from the plaintiffs and then abruptly denying the claim again on February 17th, 1978 on the grounds that it was time barred under the provisions of the policy. This is the sticky area in the whole case; in other words, between that first denial and the second denial where these negotiations were ongoing, but again, viewing the evidence in the light again most favorable to the plaintiffs I find as a matter of law that the evidence is insufficient and there are no reasonable inferences that can be drawn from the evidence that has been produced to support the allegations set forth in ... Counts Two and Four and the second and third causes of action of plaintiff's complaint. I find that the defendants had the right to continue to insist on the production of the documents evidencing the loss and that these documents, in the main had not been provided to them. Their continuing efforts and ability to investigate were dependent upon the materials that they sought in order to better evaluate the claim and decide whether they would reconsider their May 24th, 1977 denial.

 Now, if the plaintiffs were in fact as financially and emotionally distressed as they contended they were, then it was incumbent upon them to produce and submit the materials to the defendants without delay and when after all of the months had elapsed from the examination under oath, which was obviously unsatisfactory to the defendants, the plaintiffs—the defendants had not received the materials they wanted, which they felt they needed,

was entitled to rely on the statute is not in issue here. There is a question whether Globe was ever genuinely interested in obtaining the answers to the questions it had asked Othman. Globe's abrupt refusal to consider the information, at precisely the time when it believed that a failure to negotiate could no longer subject it to liability, suggests that it may not have been. There is also a question whether, even assuming some genuine interest on Globe's part, Hartwell's failure to respond to Barbagelata's correspondence for the three months preceding the expiration of the statute—from the time the offer to reconsider was made on September 26, 1977, until the "statute of limitations" letter was sent on February 17, 1978—constitutes unreasonable conduct. An unreasonable failure to make any efforts toward settlement is sufficient to constitute a breach of the duty of good faith. *See Gruenberg,* 9 Cal.3d at 573–74, 510 P.2d at 1037, 108 Cal.Rptr. at 485; *Crisci v. Security Insurance Co.,* 66 Cal.2d 425, 430, 426 P.2d 173, 176, 58 Cal.Rptr. 13, 16 (1967) (plaintiff had not shown dishonesty, fraud, or concealment).

Furthermore, Globe failed to retract its abrupt refusal to reconsider the claim and remained disinterested in the information even after it realized that suit had been timely filed. There is no reason that this continued disinterest could not be considered by the jury as evidence bearing on the question whether Globe acted in good faith during the period leading up to the sending of the letter.[11]

We believe that a reasonable jury could easily view the facts as sufficient evidence from which to conclude that Globe acted in bad faith, either (a) because its conduct during the last three months before denial of the reconsideration was unreasonable, (b) because it merely feigned interest in the information but had no real intention of reconsidering the claim, or (c) because it intentionally handled the application for reconsideration in a manner designed to entice Othman into losing his rights through the application of the statute of limitations.

Whether Barbagelata may earlier have contributed to a delay is irrelevant. Globe has never argued that the second denial cannot be considered to have been in bad faith because of the length of the delay in obtaining the information.[12] More significantly, as we have already noted, *see supra* page 8, the insurer's duty of good faith is absolute and exists even if the policyholder is delinquent in meeting its obligations. The district court erred by deciding as a matter of law that Globe had not breached its duty. Whether the second

either to dispell or to confirm either way, either to dispell, or to confirm their suspicions of arson and fraudulent loss statement, they simply decided to exercise their time rights, under the policy, they had a right to do this to protect their interest and although it seems harsh, the action does not reflect any of the egregious conduct charged against the defendants by the plaintiffs, and accordingly, for those reasons, I am granting the defendants' motions for the dismissal of Counts Two, Four and the second and third causes of action.

11. We need not decide whether an insurer's duty of good faith continues after it receives notice that a lawsuit has been filed against it. Globe failed to display any interest in the information either during the time it believed the statute of limitations had run or after it became aware that suit had been filed before the statute ran. Even assuming arguendo that an insur-

ance company's refusal to accept relevant information after it becomes apparent that a suit has been filed cannot be deemed a violation of its duty, its continued disinterest may constitute evidence regarding its good faith or lack thereof in its earlier dealings.

12. Nor is it clear that the lapse of time between the initial denial of the claim and the denial of reconsideration was attributable to any unreasonable delay on Barbagelata's part. Although Barbagelata's actions seemed less than prompt, a jury could find that the time it took Barbagelata to respond to Globe's request constituted a reasonable period of time to collect the information. Because Hartwell set no specific time limit for compliance, the offer should be deemed to be in effect for a reasonable time period. *See Halstead v. Globe Hoist Co.,* 231 F.Supp. 1012, 1020 (N.D.Cal.1964) (contractual offer which is not limited in time lapses after reasonable period); *Davies v. Langin,* 203 Cal.

denial by Globe was in bad faith is a question that must be decided by a jury.[13]

## V

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ In order to sustain a cause of action for intentional infliction of emotional distress in California, one must show: "(1) outrageous conduct by the defendant; (2) the defendant's intention of causing or his reckless disregard of the probability of causing emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Fletcher v. Western National Life Insurance Co.*, 10 Cal.App.3d 376, 394, 89 Cal.Rptr. 78, 88 (1970). Othman's claim for intentional infliction of emotional distress was properly dismissed. We need go no farther than to observe that the first element is missing in this case.

■ Outrageous conduct is conduct " 'so extreme as to exceed all bounds of that usually tolerated in a civilized community.' " *Ricard v. Pacific Indemnity Co.*, 132 Cal.App.3d 886, 895, 183 Cal.Rptr. 502, 507 (1982) (quoting *Cerventez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 595 P.2d 975, 156 Cal.Rptr. 198 (1979)). Othman has shown no evidence of conduct of this character.[14]

## VI

## PUNITIVE DAMAGES

■ Under California law, punitive damages are recoverable when the defendant has been guilty of oppression, fraud, or malice. Cal.Civ.Code § 3294 (West Supp. 1984). Both malice and oppression contain the concept of conscious disregard of the plaintiff's rights, a concept which is also central to the bad faith test. *Compare* Cal.Civ.Code § 3294(c)(1) & (2), *with Gruenberg*, 9 Cal.3d at 577–78, 510 P.2d at 1040, 108 Cal.Rptr. at 488. The issue of punitive damages should have gone to the jury.

## VII

## CONCLUSION

We affirm the district court's order granting a directed verdict on the claim of emotional distress and all bad faith claims except that based on the withdrawal of the promise to reconsider. We reverse and remand on that claim. The jury should be allowed to consider whether to award punitive damages on this issue and, if so, to determine the amount. We remand for further proceedings consistent with this opinion.

---

App.2d 579, 584–85, 21 Cal.Rptr. 682, 685–86 (1962).

13. Othman argues various other grounds to support a finding of bad faith. We reject them all as unsupported by the record.

Othman asserts that Globe never told him that it considered him a suspect and attributes his alleged ignorance to his first attorney's youth. Any reasonable person would have understood the reason for the questions asked and the documentation requested. This argument is not credible.

Othman also argues that Globe's failure to pay his business interruption insurance while investigating the claim was in bad faith. If Othman had set the fire it would not be payable. Globe's conduct was completely reasonable in this regard.

Othman argues, lastly, that Globe's preoccupation with a passing remark by Mashni, Othman's associate, that they had been "gypped" by the "crooks" who sold them the market was in bad faith. Mashni refused to answer questions on this and Globe repeatedly asked for information on it. We, like Othman, find it difficult to understand Globe's obsession with this passing remark, but agree with Globe that Mashni's refusal to answer questions was inherently suspicious. Othman and Mashni created much of the attention focused on this remark and we do not find Globe's follow-up on it even arguably in bad faith.

14. This does not mean, however, that damages for emotional distress are barred as an element of aggravation of damages for bad faith. *See Richardson v. Allstate Insurance Co.*, 117 Cal. App.3d 8, 172 Cal.Rptr. 423, 426 (1981). The damages, however, must be traceable to the insurer's failure to pay the claim, rather than, for example, outrage at a suggestion that Othman set the fire. *See Blake v. Aetna Life Insurance Co.*, 99 Cal.App.3d 901, 924, 160 Cal.Rptr. 528 (1979).