854 F.2d 1166
 Prod.Liab.Rep.(CCH)P 11,888
Fred MATTHEWS, Elias Satola, Paul Bjazevich,
Plaintiffs-Appellants/Cross- Appellees,
v.
HYSTER COMPANY, INC., Defendant-Appellee/Cross-Appellants.
Fred MATTHEWS, Elias Satola, Paul Bjazevich,
Plaintiffs-Appellants/Cross- Appellees,
v.
LYKES BROTHERS STEAMSHIP COMPANY, Hyster Company, Inc.,
Defendant- Appellee/Cross-Appellants.
 Nos. 87-5796, 87-5844.
 United States Court of Appeals,
Ninth Circuit.
 Submitted May 2, 1988*.
Decided Aug. 17, 1988.
 
 1
 Rodney C. Pranin, Julie Sullwold Hernandez, Pranin & Muldoon, Wilmington, Cal., for plaintiffs-appellants/cross-appellees.
 
 
 2
 J. Michael Crowe, Ann Kough, Crowe and Day, Los Angeles, Cal., for defendant-appellee/cross-appellants.
 
 
 3
 Appeal from the United States District Court for the Central District of California.
 
 
 4
 Before GOODWIN, HALL, Circuit Judges, and SCHNACKE,** District Judge.
 
 SCHNACKE, District Judge:
 I STATEMENT OF THE CASE
 
 5
 Plaintiffs (appellants/cross-appellees) appeal from a directed verdict in favor of defendant Hyster Company, Inc. Hyster (appellees/cross-appellants) appeals from the admission of evidence of subsequent design modifications made to the relevant machine. Jurisdiction over the appeal and the cross-appeal is based on 28 U.S.C. Sec. 1291 (1982).
 
 
 6
 Plaintiffs Matthews, Satola and Bjazevich brought this personal injury case against Lykes Brothers Steamship Co. and Hyster. The case was commenced in Los Angeles County Superior Court and was removed to the United States District Court, Central District of California on the basis of diversity. 28 U.S.C. Sec. 1441 (1982). Plaintiffs alleged negligence, and strict product liability against Hyster based on its design and maintenance of its 520-B forklift. Defendants contended that the accident was caused by operator error.
 
 
 7
 The court granted a directed verdict against plaintiffs and judgment was entered. Plaintiffs appeal from the judgment on the directed verdict.
 
 II FACTS
 
 8
 On September 30, 1982, plaintiff Bjazevich, a longshoreman, was assigned to drive a Hyster 520-B forklift. Bjazevich drove the forklift onto Lykes' ship, picked up a container, and began backing down the ramp to the dock. Halfway down the ramp, Bjazevich was instructed to stop because a truck blocked the end of the ramp.
 
 
 9
 Bjazevich testified that he stepped on the brake and nothing happened. Bjazevich then attempted to slow down the forklift by hitting the side of the ship. The forklift hit another truck on the dock, injuring plaintiffs Matthews and Satola.
 
 
 10
 Evidence was presented showing the availability of a later type of forklift design, containing a brake in the inching pedal such that when the inching pedal (in effect, a clutch) is depressed completely the brake is engaged. The Hyster 520-B that Bjazevich was driving did not have a brake in the inching pedal. However, at no time did Bjazevich attempt to use the inching pedal in an effort to stop the forklift.
 
 
 11
 The Hyster 520-B has an emergency brake located at the operator's side. When driving down the ramp, Bjazevich swivelled his seat to a 45 degree angle in order to back down the ramp. This seat position results in the emergency brake being located behind him as he drove down the ramp. Bjazevich testified that he did not attempt to use the emergency brake. After the accident, four companies examined the brake system and found it to be functioning properly.
 
 III STANDARD OF REVIEW
 
 12
 "A directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict." Twin City Fire Ins. Co. v. Philadelphia Life Ins. Co., 795 F.2d 1417, 1423 (9th Cir.1986), citing Shakey's, Inc. v. Covalt, 704 F.2d 426, 430 (9th Cir.1983). A directed verdict is not appropriate if there is substantial evidence to support a verdict for the non-moving party. Id. This standard is identical in both trial and appellate courts. Id., citing Othman v. Globe Indemnity Co., 759 F.2d 1458, 1463 (9th Cir.1985).
 
 
 13
 Maritime law governs the tort aspects of this matter since the accident occurred on the ramp of a vessel in port and had a connection to traditional maritime activity. Edynak v. Atlantic Shipping Inc., 562 F.2d 215, 220-21 (3d Cir.1977), cert. denied, 434 U.S. 1034, 98 S.Ct. 767, 54 L.Ed.2d 751 (1978). General maritime law incorporates strict liability and negligence principles of products liability. East River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 865-66, 106 S.Ct. 2295, 2299-2300, 90 L.Ed.2d 865 (1986). This circuit has adopted the Restatement (Second) of Torts Sec. 402A (1965) as the law of strict products liability in admiralty cases. See Pan-Alaska Fisheries, Inc. v. Marine Construction & Design Co., 565 F.2d 1129, 1135 (9th Cir.1977). The negligence principles of the Restatement (Second) of Torts Sec. 395 are incorporated into general maritime law. Sieracki v. Seas Shipping Co., 149 F.2d 98, 99-100 (3d Cir.1945) aff'd on other grounds, 328 U.S. 85, 66 S.Ct. 1116, 90 L.Ed.2d 1099 (1946).
 
 IV STRICT PRODUCT LIABILITY
 
 14
 Plaintiffs claim four design defects: no brake in the inching pedal; no warning about the brake's absence; misplacement of the emergency brake; and an insufficient maintenance manual. Any defect must be shown to have contributed to, or caused the accident. Total failure to show that the defect caused or contributed to the accident cannot support a finding of strict product liability. Restatement (Second) of Torts, Sec. 402A.
 
 
 15
 The Hyster 520-B did not have a brake in the inching pedal, while some later models are designed with inching pedals containing brakes. Siegal, plaintiffs' expert, opined that a model without the brakes is defective because operators may get confused, depressing the inching pedal on a model without the brake, and expecting it to stop. However, Bjazevich testified that he did not attempt to use the inching pedal to stop the forklift; he did not know how to use the inching pedal; and he never used the inching pedal when operating this type of forklift.
 
 
 16
 Therefore, even if the forklift were defective for lack of a brake in the inching pedal, there was no evidence that the lack of a brake in the inching pedal confused the plaintiff, or the plaintiff's expectation of such a brake, or the brake's absence, was in any way the cause of this accident.
 
 
 17
 Plaintiffs contend that Hyster's failure to place a warning on the machine, notifying the operator that the inching pedal did not have a brake in it, was a defect and that this defect caused the accident. Bjazevich testified that he did not think that the inching pedal contained a brake, and that he did not depress the inching pedal expecting it to stop the forklift. Bjazevich had no mistaken belief which may have been cured by a warning. The lack of warning on the forklift about the absence of a brake in the inching pedal did not contribute to the accident.
 
 
 18
 Plaintiffs also sought to recover on the theory of defective design of the emergency brake. Bjazevich testified that he knew where the emergency brake was and that he had used it in the past. He further testified that on this occasion he did not attempt to use the emergency brake. Furthermore, the Hyster 520-B is designed such that if the brakes fail, the emergency brake is applied automatically and the operator does not have to be concerned about its location. Substantial evidence does not exist to prove that the design of the emergency brake caused or contributed to the accident.
 
 
 19
 Plaintiffs further alleged the forklift was defective because the manual did not prescribe maintenance sufficient to prevent contaminants from entering the brake system and that this defect caused the accident. Plaintiffs' expert theorized that contaminants may have gotten into the brake system and caused the brakes to malfunction when Bjazevich depressed them. Siegal did not examine the brakes, and did not know the exact design of the Hyster 520-B's brake system.
 
 
 20
 No evidence of defective maintenance, or of any contaminant in the brake system was produced. The Hyster 520-B's brakes were tested in four examinations after the accident and were found to be functioning properly. There was unrefuted expert testimony that if there were contaminants in the brake system at the time of the accident, it would have been found in the examinations. Plaintiff's expert's unsubstantiated theory was refuted by numerous witnesses who personally examined the brake system.
 
 
 21
 If the brakes had been improperly cared for, the question of whether the maintenance manual described appropriate maintenance might be relevant. However, there is no evidence that the brakes were improperly cared for, and thus, contaminated.
 
 V NEGLIGENCE
 
 22
 Plaintiffs also contend that Hyster was negligent based on the same conduct discussed in the strict product liability section. Causation must be proven to link the negligence to the accident which occurred. Restatement (Second) of Torts, Secs. 430-431. As has been discussed above, plaintiffs did not prove that Hyster caused the accident. The negligence cause of action fails without considering the other elements of the tort because causation is not proven.
 
 
 23
 Substantial evidence to support a verdict for plaintiffs does not exist in this case. The judgment is AFFIRMED. The Cross-Appeal is moot and is DISMISSED.
 
 
 
 *
 The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34-4 and Fed.R.App.P. 34(a)
 
 
 **
 Robert H. Schnacke, United States District Judge for the Northern District of California, sitting by designation