[No. B096820. Second Dist., Div. One. Oct. 17, 1996.]

KYU SHUP LEE et al., Plaintiffs and Appellants, v.
CRUSADER INSURANCE COMPANY, Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part B.

**COUNSEL**

James T. Linford, Eisfelder & Eliaser and Robert W. Eisfelder for Plaintiffs and Appellants.

Staitman, Snyder & Tannenbaum, Jack M. Staitman and Keith A. Turner for Defendant and Respondent.

**OPINION**

**MASTERSON, J.**—Following a fire at an insured premises, the insureds are prosecuted for arson. Their insurer suspects that the insureds might not be guilty, but defers resolution of their claim until they are acquitted. In the published portion of this opinion we hold that under these circumstances the insurer is not liable for bad faith in its handling of the insureds' claim. We therefore affirm the summary judgment entered in favor of the insurer.

## BACKGROUND

Plaintiffs Kyu Shup Lee and Syung Sin Lee owned a grocery and liquor store in Los Angeles that was insured by defendant Crusader Insurance Company under a policy that provided $99,000 coverage for the contents of the store and $20,000 coverage for the Lees' loss of earnings. The market and its contents were destroyed by fire on April 29, 1992, in the wake of the state court acquittal of the police officers who were charged with beating Rodney King. On May 1, the Lees made a claim under the policy.

On May 26, 1992, Los Angeles City Fire Department Arson Investigator Frank Oglesby notified Crusader that the Lees were being investigated for the arson of their store. In a letter dated May 29, the fire department informed Crusader that, pursuant to the Insurance Code, Crusader was required to provide information regarding the Lees' insurance policy and Crusader's investigation of the Lees' claim (Ins. Code, § 1875.1), and to cooperate with the arson investigation of any authorized agency (§ 1875.2). The letter also referred to Insurance Code section 1875.4, which immunizes an insurer from civil liability for cooperating in an arson investigation absent fraud or malice.

In a June 18, 1992, telephone conversation, Oglesby told a Crusader claims adjuster that there were witnesses who reported seeing the Lees take merchandise out of the store shortly before the fire and that the witnesses further stated that the Lees solicited someone to burn the store. Oglesby told the adjuster that once a proof of loss had been submitted he would obtain a search warrant for the Lees' home and storage garage. Oglesby wanted Crusader to work on this as soon as possible "before the insured gets suspicious."[1]

Crusader wrote to the Lees on June 26, 1992, requesting documentation in support of their claim. On July 7, Crusader sent a letter to the Lees asking them to sign a partial proof of loss for an enclosed check in the amount of $17,000. Although the check was not in fact enclosed, the Lees signed the proof of loss form and returned it to Crusader. On July 21, following Crusader's receipt of the signed proof of loss, Crusader provided Oglesby with a copy of its file on the Lees' claim.

Oglesby obtained and served a search warrant for the Lees' property in late July 1992. In mid-August, Oglesby told Crusader that the search had been conducted and that he expected criminal charges to be filed against the

---

[1]Oglesby did not recall making this statement, nor did he recall a statement attributed to him by Crusader from a conversation two weeks later that he wanted to "get" the Lees.

Lees. The following day, Crusader informed the Lees that an arson investigation was underway, that the partial proof of loss had been issued in error, and that Crusader lacked sufficient information to establish the Lees' claimed loss.

Following these events, Crusader's claims manager, Roger Platten, took over the Lees' file. In an internal memo dated August 26, 1992, Platten stated that the $17,000 proof of loss should not have been issued because of the arson investigation[2] and that the Lees' examinations under oath should be scheduled. At the time the memo was written, Platten had no independent information that the Lees were guilty of arson, but believed "there was probably strong evidence to convict them because Oglesby told [Platten] that they had a great case against the Lees."

In mid-September 1992, Crusader told the Lees that it appeared their claim was "something less than genuine" and that the claim would continue to be adjusted under a reservation of rights. A few days later Crusader instructed the Lees to submit a new proof of loss, produce certain documents to substantiate their losses, and appear to be examined under oath.[3]

In early October 1992, Oglesby told Crusader that he expected arrest warrants for the Lees to issue in about a week. On October 9, the Lees appeared with counsel for their examinations under oath. They also submitted proofs of loss for amounts in excess of the policy limits of $119,000. Following the examinations under oath, Platten "was of the opinion that [he] had serious reservations about whether or not the Lees were involved [with the fire], and . . . had reason to suspect that they were not." However, he had not come to a "conclusion" that the Lees were not guilty of arson.

A felony complaint was thereafter filed by the Los Angeles County District Attorney that charged the Lees with arson, insurance fraud, and grand theft.[4] In early November 1992, Crusader told the Lees that it could not accept their proof of loss until the criminal charges had been resolved.

Once the charges were filed, Crusader did not conduct any independent investigation with respect to the Lees' insurance claim. However, Platten did ask Oglesby and the deputy district attorney who was handling the case to provide the names of the witnesses who would testify for the prosecution. The information was not provided. As of January 6, 1993, Platten "still had

---

[2]Platten was on vacation when the $17,000 proof of loss was sent to the Lees.

[3]The terms of the policy required the Lees to produce documents in support of their claims, execute appropriate proofs of losses, and submit to be examined under oath.

[4]The complaint further charged the Lees with forgery and making false financial statements, arising out of an unrelated incident.

every reason to believe that whatever evidence the DA's office had, it must have been good."

In the summer of 1993, during the course of conversations regarding his appearance as a prosecution witness at the preliminary hearing, Platten was told by either Oglesby or the trial deputy district attorney that the prosecution witnesses who were expected to testify against the Lees "weren't holding up." Despite this information, Platten continued to have a "strong suspicion that [the Lees] were guilty, because [the prosecution] had to have something to bring the charges against them." By the fall, however, "even though charges were still pending, [Platten] got to the point where [he] was convinced in [his] mind that not only were the Lees probably not involved in the fire, but that the police didn't have good, solid evidence to indicate that they were." Crusader then entered settlement negotiations with the Lees. In November 1993, Crusader offered $70,000, which it considered to be the fair value of the Lees' claim. The Lees did not respond.

In late February 1994, the Lees were acquitted of all charges in the criminal case. Crusader, which had not followed the trial, was told of the outcome in late March. Three days later, Crusader sent a check to the Lees for the policy limits of $99,000 contents and $20,000 loss of earnings. In a cover letter, Crusader acknowledged that the Lees' lost earnings exceeded $20,000. However, Crusader asserted that the Lees' tax returns and escrow documents demonstrated an inventory valued at approximately $30,000 and fixtures, which had been fully depreciated, worth about $8,000. Nonetheless, "in the interests of closing this claim and taking into consideration the interest value for the long period that the criminal charges were pending, [Crusader was] willing to pay the full policy limits on contents."

On July 14, 1994, the Lees filed a complaint against Crusader for tortious breach of contract and intentional infliction of emotional distress. The Lees alleged that Crusader committed bad faith by falsely accusing them of fraud and criminal conduct, assisting governmental authorities in falsely accusing them of crimes by requiring them to execute a proof of loss (for which payment was not enclosed) and to submit to examinations under oath for the sole purpose of assisting the government, and delaying the processing and payment of their claim.

Following discovery, Crusader moved for summary judgment. In its motion Crusader argued that the Lees could not prevail on a bad faith claim because it had not accused the Lees of fraud, had not acted with malice in assisting with the arson investigation, and had not acted unreasonably in

awaiting the outcome of the prosecution before resolving the Lees' claim. In opposition, the Lees asserted that Crusader had not negated their allegation that Crusader falsely and maliciously accused them of criminal activity and fraud, and that it was not reasonable for Crusader to await the resolution of criminal proceedings because Crusader did not have a basis to believe that the Lees were guilty.

Crusader's motion was granted. In an order filed in July 1995, the trial court found that the fire department, not Crusader, initiated and pursued the investigation, that Crusader's cooperation with the investigation was not malicious or fraudulent, and that it was reasonable as a matter of law for Crusader to await the outcome of the criminal action before finally resolving the Lees' claim. Judgment was later entered, and this appeal followed.

## STANDARD OF REVIEW

■ Summary judgment is appropriate if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) A defendant seeking summary judgment has met its burden of showing that a cause of action has no merit if it demonstrates that one or more elements of the cause of action cannot be established. Once the defendant meets that burden, the burden shifts to the plaintiff to show that a triable issue of material fact exists as to the cause of action. The plaintiff may not rely upon the mere allegations or denials of its pleadings. Rather, it must set forth the specific facts that demonstrate the existence of the triable issue of material fact. (*Id.* § 437c, subd. (o)(2).) "An issue of fact can only be created by a conflict of evidence. It is not created by 'speculation, conjecture, imagination or guess work.' [Citations.]" (*Sinai Memorial Chapel* v. *Dudler* (1991) 231 Cal.App.3d 190, 196 [282 Cal.Rptr. 263].)

The appellate court reviews the evidence presented to the trial court and independently adjudicates its effect as a matter of law. (*Torres* v. *Cool Carriers A.B.* (1994) 26 Cal.App.4th 900, 904-905 [31 Cal.Rptr.2d 790].) After identifying the issues, the appellate court determines whether the moving party has established facts that prima facie justify judgment in its favor and, if so, whether the opposing party has demonstrated the existence of a triable issue of material fact. (*Hernandez* v. *Modesto Portuguese Pentecost Assn.* (1995) 40 Cal.App.4th 1274, 1279 [48 Cal.Rptr.2d 229].)

## DISCUSSION

The contentions of the Lees that we discuss in this opinion arise from the law of bad faith.[5] We discuss them in two sections. In the published portion of this opinion, we consider the Lees' assertion that Crusader was not entitled to await the outcome of the criminal prosecution before resolving their claim. In the unpublished portion of this opinion, we discuss other arguments raised by the Lees which they assert provide an independent basis for their allegations of bad faith. In our discussion, we are guided by the following principles:

■ Every contract contains an implied covenant of good faith and fair dealing. (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173].) For insurance contracts, the covenant imposes upon the insurer the duty to act promptly on claims and to refrain from unreasonably withholding payment. (*Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 920 [148 Cal.Rptr. 389, 582 P.2d 980]; *Austero* v. *National Cas. Co.* (1978) 84 Cal.App.3d 1, 32 [148 Cal.Rptr. 653], disapproved on other grounds in *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 824, fn. 3 [169 Cal.Rptr. 691, 620 P.2d 141].) Conversely, an insurer is relieved of this duty where "proper cause" exists for such relief. (*Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 574 [108 Cal.Rptr. 480, 510 P.2d 1032]; *California Shoppers, Inc.* v. *Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54 [221 Cal.Rptr. 171].) To fulfill the covenant of good faith and fair dealing, an insurer is required to give equal consideration to the interests of its insured as it does to itself. (*Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d at pp. 818-819.)

■ The Lees' allegation of breach of the covenant of good faith and fair dealing is a "first party" claim—i.e., one in which the insured seeks benefits under its insurance policy to compensate for losses sustained as a result of a covered peril. (*Waters* v. *United Services Auto. Assn.* (1996) 41 Cal.App.4th 1063, 1070 [48 Cal.Rptr.2d 910].) "The ultimate test of bad faith liability in first party cases is whether the refusal to pay policy benefits, or alleged delay in paying, was unreasonable. [Citations.] While the reasonableness of an insurer's claims handling conduct is ordinarily a question of fact, it becomes a question of law where the evidence is undisputed and but one inference can be drawn from the evidence. [Citation.]" (*Carlton* v. *St. Paul*

---

[5]The Lees also contend that triable issues exist regarding whether Crusader's conduct was sufficiently outrageous to constitute intentional infliction of emotional distress and to provide a basis for punitive damages, and whether the Lees are entitled to attorney's fees. Based on our conclusion that Crusader's conduct vis-à-vis the Lees' claim did not constitute bad faith, we need not discuss these issues.

*Mercury Ins. Co.* (1994) 30 Cal.App.4th 1450, 1456 [36 Cal.Rptr.2d 229]; see *Paulfrey* v. *Blue Chip Stamps* (1983) 150 Cal.App.3d 187, 196 [197 Cal.Rptr. 501].)

**A.** *Crusader Was Entitled to Await the Outcome of the Criminal Action Before Resolving the Lees' Claim*

■ In October 1992, the Lees were examined under oath by Crusader and were charged with arson by the Los Angeles County District Attorney. They were acquitted in February 1994. The Lees contend that Crusader was not entitled to defer resolution of their claim while criminal charges were pending, especially in view of claims manager Platten's "serious reservations" about their culpability immediately following the examinations under oath and Platten's admission that by the fall of 1993 he became "convinced in [his] mind that [the Lees] were probably not involved in the fire." We have found no cases which address the insurer's duty in this unusual situation. Two federal cases cited by the parties are helpful to our analysis.

In *Othman* v. *Globe Indem. Co.* (9th Cir. 1985) 759 F.2d 1458 (overruled on another point in *Bryant* v. *Ford Motor Co.* (9th Cir. 1988) 844 F.2d 602, 605), the insured's supermarket was destroyed by arson. The insurer hired an investigator, whose activities were limited to a review of an investigation that had already been completed by civil authorities. All the evidence pointed toward arson, with "suspicions" that the insured had set the fire himself. The insured's claim under his fire policy was denied on the ground that he failed to produce documents requested by the insurer and to otherwise satisfactorily cooperate with the insurer's investigation. (759 F.2d at p. 1461.) The insured then sued for bad faith on the theory, inter alia, that the insurer had not adequately investigated his claim. In affirming a directed verdict against the insured, the court found the investigator's reliance on the report of the civil arson authorities to be adequate. (*Id.* at pp. 1463-1464.)

In *Suggs* v. *State Farm Fire and Cas. Co.* (10th Cir. 1987) 833 F.2d 883, an initial investigation by an insurer and the state fire marshal concluded that a residential fire was the result of arson, and the fire marshal further concluded that it was the insured who set the fire. The insured was arrested and charged with arson. With criminal charges pending, the insured hired experts who concluded that the fire was probably caused by an electrical malfunction. Criminal proceedings were then dismissed. An expert thereafter retained by the insurer concluded that the fire was not of electrical origin, and the insurer denied the insured's fire damage claim on the ground that the insured had intentionally set the fire. The insured responded by suing for benefits under the policy, as well as for bad faith. A jury found in favor of

the insured on both causes of action. (*Id.* at pp. 885-886.) On appeal, the bad faith judgment was reversed. The termination of the arson prosecution was found to be immaterial inasmuch as the disposition of criminal cases involves different criteria than civil cases. In any event, substantially conflicting evidence existed regarding the nature of the fire. Based on this conflict, the *Suggs* court held that the only reasonable conclusion the jury could have reached was that the insurer had not acted in bad faith. (*Id.* at p. 891.)

These cases support the summary judgment entered in favor of Crusader. Although Crusader was apparently not privy to any of the documents generated by the fire department or the office of the district attorney, it was aware that the investigation conducted by these agencies had resulted in the bringing of charges against the Lees for the crime of arson. Given the lack of fraud or malice on Crusader's part, and despite Crusader's doubts about the Lees' guilt, we find that the pendency of this prosecution provided Crusader with a reasonable basis for deferring action on the Lees' claim.[6] The foundation of this reasonable basis is found in the formidable hurdles that prosecutorial authorities must clear in order to instigate and pursue a criminal prosecution.

For example, an arrest warrant would not have issued for the Lees unless a "reasonable ground" existed to believe that they had committed a felony. (Pen. Code, § 813, subd. (a).) Alternatively, the Lees could not have been arrested without a warrant unless "reasonable cause" existed for the arresting officer to believe that a felony had been committed. (*Id.*, § 836, subd. (a)(3).) Once arrested, the Lees were entitled to a preliminary hearing on the charges and could not be held to answer in superior court unless the magistrate found "sufficient cause" to believe them guilty. (*Id.*, § 872, subd. (a).) Similarly, they could not have been indicted by a grand jury unless the evidence presented would "warrant a conviction by a trial jury." (*Id.*, § 939.8.) Upon their arraignment in superior court, the Lees were entitled to have the indictment or information set aside if either were not supported by probable cause. (*Id.*, § 995, subd. (a).)

The record sheds little light on the basis for Crusader's suspicions that the Lees were not guilty of arson and their belief that the prosecution might not be successful. Nonetheless, the record clearly establishes that Crusader was informed of a fire department arson investigation less than a month after the Lees' loss. Over the course of the next several months, the investigation led to the issuance of search and arrest warrants and the filing of arson charges against the Lees. We find that, as in *Othman* v. *Globe Indem. Co.*, *supra*, 759 F.2d 1458, and *Suggs* v. *State Farm Fire and Cas. Co.*, *supra*, 833 F.2d 883,

---

[6]We reject the Lees' assertion of Crusader's fraud or malice in the unpublished portion of this opinion.

it was reasonable for Crusader to refrain from conducting an independent investigation of the Lees' claim during the pendency of the criminal prosecution. Indeed, Crusader's position is much stronger than the insurers' positions in *Othman* and *Suggs* because it was the prosecutorial arm of the state, rather than civil or private investigations, that established the reasonableness of Crusader's conduct in refraining from taking steps to resolve the Lees' claim until the Lees were exonerated.

We do not express an opinion on whether the mere existence of conflicting evidence or the pendency of an investigation or administrative proceeding regarding suspected arson necessarily provides a reasonable basis for an insurer to defer action on a claim until the cause of the covered injury or damage has been established. Our holding is limited to the specific situation in which a prosecution is pending against the insured for intentionally causing the damage on which the claim is based. It is irrelevant that the insurer may suspect or even have come to the conclusion that acquittal is likely. In such a situation deferral of the claim is not only reasonable, but is the only course that satisfies the policy expressed in Insurance Code section 533, which relieves an insurer from liability "for a loss caused by the wilful act of the insured."

Based on the evidence presented by Crusader on summary judgment regarding the pendency of the criminal action against the Lees, the only inference to be drawn is that, as a matter of law, Crusader's conduct was reasonable. (See *Carlton* v. *St. Paul Mercury Ins. Co., supra*, 30 Cal.App.4th at p. 1456.) Accordingly, the Lees' assertion of bad faith on this ground was properly rejected.

B. *The Lees Have Not Raised a Triable Issue of Material Fact Regarding the Existence of Fraud or Malice**

. . . . . . . . . . . . . . . . . . . . . . . .

DISPOSITION

The judgment is affirmed.

Ortega, Acting P. J., and Vogel (Miriam A.), J., concurred.

A petition for a rehearing was denied November 7, 1996, and appellants' petition for review by the Supreme Court was denied January 15, 1977. Chin, J., was of the opinion that the petition should be granted.

---

*See footnote, *ante*, page 1750.