[No. E048184. Fourth Dist., Div. Two. May 25, 2010.]

THE PEOPLE, Plaintiff and Respondent, v.
JORGE JOSE CASAS, Defendant and Appellant.

## COUNSEL

Thien Huong Tran, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Meredith A. Strong, Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**RAMIREZ, P. J.**—Defendant, Jorge Jose Casas, a salesman at a car dealership, used a trade-in vehicle to follow a customer home to collect the downpayment, a process referred to as "chasing." However, he did not return to the dealership immediately with the downpayment or the trade-in vehicle, using the vehicle to drive nearly 400 miles in search of drugs to purchase using the cash portion of the downpayment. He was convicted of embezzlement (Pen. Code,[1] §§ 503, 508) following a jury trial and sentenced to state prison.

Defendant initially filed a brief in accordance with the procedures outlined in *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071], requesting that we independently review the entire record to determine if there were arguable issues. We requested supplemental briefing to address conflicting decisions relating to the elements of the crime of embezzlement, specifically, (1) whether the trial court erroneously excluded evidence that defendant lacked an intent to permanently deprive the owner of the property, and (2) whether the trial court erred in instructing the jury that an intent to temporarily deprive the owner of the property was enough. Defendant and respondent submitted supplemental briefs. We affirm.

### BACKGROUND

On January 18, 2008, Clifford B. went to a Ford dealership to purchase a new F-150 truck. Defendant was the salesperson who assisted him in the transaction. Clifford B. was driving a 2004 F-150 truck, which he intended to use as a trade-in. In addition, the purchase agreement called for a downpayment of $1,500. At the time of the purchase, Clifford did not have the

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

downpayment with him; in such situations, the practice is for the salesman to follow the buyer home to collect the downpayment and submit it to the finance officer upon return to the dealership. This is referred to as "chasing" the buyer.

On this occasion, after signing the purchase agreement, Clifford B. drove home in the newly purchased truck, followed by defendant who drove the trade-in vehicle. Normally, salespersons are supposed to drive their own vehicles to "chase" a customer. When they arrived at Clifford's residence, Clifford gave defendant a check in the amount of $1,000 and $500 in cash. However, defendant did not return immediately with the trade-in truck or the downpayment.

The next day, January 19, 2008, Clifford B. realized he had left something in the old truck that he had traded in, so he called the dealership to arrange to retrieve the item. An assistant sales manager took the call but the trade-in vehicle was missing, along with the keys to the vehicle. Defendant did not show up at the dealership that day, although he was scheduled to work. The sales manager then reported the vehicle as stolen. On January 21, 2008, defendant showed up at the dealership with the trade-in vehicle and the check from Clifford B., but without any cash. When the police arrived, defendant informed the officer he had driven the truck to numerous locations over the two-day period in search of drugs to purchase. The odometer indicated defendant had driven the trade-in vehicle nearly 400 miles. According to defendant's wife, she drove the only vehicle owned by the couple.

Defendant was arrested and charged with embezzlement (§ 508), as well as driving or taking a vehicle without the owner's permission. (Veh. Code, § 10851, subd. (a).) It was further alleged that defendant had been previously convicted of a serious or violent felony, within the meaning of the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and one prior conviction for which he had served a prison sentence (prison prior) (§ 667.5, subd. (b)). He was tried by a jury, which convicted him of the embezzlement charge, but deadlocked on the unlawful driving of the vehicle charge. A mistrial was declared as to the vehicle count.

Further proceedings relating to the prior conviction allegations were heard by the jury which found both the strike allegation and the prison prior allegation true. At sentencing, the court dismissed count 2, and sentenced defendant to the midterm of four years (two years, doubled due to the strike) for the embezzlement count, plus one year for the prison prior, for a total

sentence of five years in prison. On November 24, 2008, defendant untimely filed a notice of appeal; however, on April 21, 2009, we issued an order by which the notice was deemed constructively filed in a timely manner.

## DISCUSSION

■ In conducting our independent review of the record pursuant to the holding of *People v. Wende, supra*, 25 Cal.3d 436, we noted an incongruity and inconsistency in the law governing the elements of embezzlement. Our research revealed cases holding that embezzlement, a form of larceny, has the same theft elements. The offense is committed by every person who (1) takes possession (2) of personal property (3) owned or possessed by another (4) by means of trespass (5) with the intent to steal the property, and (6) carries the property away. (*People v. Davis* (1998) 19 Cal.4th 301, 305 [79 Cal.Rptr.2d 295, 965 P.2d 1165] (*Davis*).) The general rule, as stated by the *Davis* court, is that the intent to steal required for larceny is an intent to deprive the owner *permanently* of possession of the property. (*Id.* at p. 307; see also *People v. Cuccia* (2002) 97 Cal.App.4th 785, 796 [118 Cal.Rptr.2d 668], quoting *People v. Miller* (2000) 81 Cal.App.4th 1427, 1445–1446 [97 Cal.Rptr.2d 684].)

However, there are decisions that have affirmed convictions for embezzlement after noting that an intent to temporarily deprive the owner of the property is sufficient. (See *In re Basinger* (1988) 45 Cal.3d 1348, 1363 [249 Cal.Rptr. 110, 756 P.2d 833]; *People v. Cuccia, supra*, 97 Cal.App.4th at p. 797 [citing *Basinger*, after acknowledging that the elements included an intent to permanently deprive]; *People v. McClain* (1956) 140 Cal.App.2d 899, 900 [295 P.2d 952].) Some cases have affirmed embezzlement convictions reasoning that the gist of the offense is the appropriation to the defendant's own use of property delivered to him for a specified purpose other than his own enjoyment of it. (*People v. Parker* (1965) 235 Cal.App.2d 100, 108–109 [44 Cal.Rptr. 909], citing *People v. Woolson* (1960) 181 Cal.App.2d 657, 667 [5 Cal.Rptr. 766]; *People v. Hodges* (1957) 153 Cal.App.2d 788, 793 [315 P.2d 38].)

Recently, the First District Court of Appeals held that evidence of a defendant's intent to restore embezzled property was irrelevant because of fraudulent intent, that is, the intent to use the property for a purpose other than that for which the dealership intended. (*People v. Sisuphan* (2010) 181 Cal.App.4th 800, 813 [104 Cal.Rptr.3d 654].) In that case, an employee took an envelope containing approximately $30,000, which had been caught in the hopper at the top of the safe of a car dealership, but returned the money two

weeks later. (*Id.* at pp. 804–805.) The defendant contended that an intent to restore property is a defense to embezzlement if the restoration occurs before criminal charges are filed. (Referring to § 512.)

The reviewing court noted that the offense of embezzlement contemplates a principal's entrustment of property to an agent for certain purposes and the agent's breach of that trust by acting outside his authority in his use of the property. (*People v. Sisuphan, supra,* 181 Cal.App.4th at pp. 813–814, citing *People v. Talbot* (1934) 220 Cal. 3, 14 [28 P.2d 1057].) The court in *Sisuphan,* however, did not address the precise question of whether an intent to permanently deprive the owner is, or is not, an element of the crime, and did not discuss the decision in *Davis, supra,* 19 Cal.4th at page 307, holding that such a mental state is an element of the crime.

■ It is difficult to reconcile the two lines of cases dealing with contradictory mental states. However, to the extent that the cases are consistent in holding that the gist of the offense of embezzlement is the appropriation to one's own use of property delivered to him for devotion to a specified purpose other than his own enjoyment of it (see *People v. Hodges, supra,* 153 Cal.App.2d at p. 793), the necessary mental state may be found to exist whenever a person, for any length of time, uses property entrusted to him or her in a way that significantly interferes with the owner's enjoyment or use of the property.

■ Here, the owner's use and enjoyment of the trade-in vehicle and monetary deposit for the truck purchase was interfered with significantly by defendant's use of the vehicle to travel approximately 400 miles, over the course of two days, in search of drugs, which were purchased with the cash portion of the downpayment. Even if defendant had intended to eventually return both the trade-in vehicle and the money, his appropriation of both, for his own personal use, was significant in duration and incompatible with the owner's enjoyment or use of the property.[2]

Using the definition we have adopted, the proffered evidence was irrelevant, so the exclusion of same by the trial court was not an abuse of discretion. Further, the court's modification of CALCRIM No. 1806, instructing the jury that an intent to temporarily deprive was sufficient to prove the mens rea of the crime of embezzlement was not error.

---

[2] The additional mileage on the odometer also likely reduced the value of the dealership's property.

## DISPOSITION

The judgment is affirmed.

McKinster, J., and Miller, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 15, 2010, S184293. Corrigan, J., was of the opinion that the petition should be granted.