[No. G043748. Fourth Dist., Div. Three. Oct. 31, 2011.]

GREG BARNETT, Plaintiff and Appellant, v.
STATE FARM GENERAL INSURANCE COMPANY, Defendant and
Respondent.

## COUNSEL

The Marks Law Firm and Scott A. Marks for Plaintiff and Appellant.

Berger Kahn, Sherman M. Spitz and Jeffrey S. Crowe for Defendant and Respondent.

## OPINION

**ARONSON, Acting P. J.**—Greg Barnett appeals from a judgment entered in favor of State Farm General Insurance Company (State Farm) after the trial court granted State Farm's summary judgment motion concerning the scope of a theft provision in a homeowners' policy it issued Barnett. Barnett argues the trial court erred in concluding police seizure of items pursuant to a search warrant did not constitute a theft within the policy terms. The items seized included 12 seven-foot tall marijuana plants, freezer bags containing a total of approximately five ounces of marijuana, and a tray with loose marijuana and rolling paper, which Barnett used for medicinal purposes. As we explain, the police department's acts of seizing these items pursuant to a search warrant and later destroying them did not trigger the theft provision in Barnett's policy. We therefore affirm the judgment.

I

### FACTUAL AND PROCEDURAL BACKGROUND

Barnett obtained a homeowners insurance policy from State Farm for the period between April 11, 2007, and at least July 7, 2009. The policy included coverage for personal property on a named perils basis. Specifically, the policy covered "direct physical loss to property" caused by enumerated hazards, including theft. The theft provision in the policy reads as follows, extending coverage to: "Theft, including attempted theft and loss of property from a known location when it is probable that the property has been stolen." An additional provision specified that the insurance policy applied to cover personal property owned or used by Barnett if stolen "away from [his] residence premises," with certain exemptions inapplicable here.[1] The policy terms expressly covered "Trees, Shrubs and Other Plants," specifying: "We cover outdoor trees, shrubs, plants or lawns, on the residence premises, for direct loss caused by the following: . . . Vandalism or malicious mischief or Theft." (Boldface omitted.)

---

[1] For example, theft coverage for personal property away from home did not extend to "watercraft of all types" or their furnishings, motors, etc.

Officers from the Costa Mesa Police Department (CMPD) executed a search warrant at Barnett's residence on August 10, 2007. A magistrate had issued the warrant with directions on its face "to any sheriff, policeman or peace officer in the County of Orange" (capitalization and boldface omitted) as follows, "You are Therefore COMMANDED to SEARCH: THE PREMISES at 3065 Hayes Avenue . . . [¶] For the FOLLOWING PROPERTY . . . : Marijuana . . . . [¶] AND TO SEIZE IT/THEM IF FOUND . . . ." The officers executing the search warrant dug up Barnett's marijuana plants from his backyard, and also seized two freezer bags of marijuana and a tray containing loose marijuana and rolling papers.

According to Barnett, the warrant would not have issued if the officer who obtained it had been more forthright. That officer, CMPD Officer Larry Fettis, prepared the statement of probable cause attached to the warrant application after receiving a tip about the extent of Barnett's marijuana cultivation, confirmed by a police helicopter overflight detecting as many as a dozen plants. Fettis noted in his warrant application "that in 2001 there was prior police documentation confirming that marijuana was found growing in the back yard of the residence." Barnett asserts Fettis would not have obtained the warrant if he had disclosed to the magistrate the details of the 2001 police contact. An officer on the helicopter overflight, Bang Le, revealed those details to Fettis before Fettis applied for the warrant.

According to Barnett, Le informed Fettis the 2001 contact arose when Barnett called the police to report vandalism at his property. The responding officers, including Le, apprehended a suspect, who, in the course of his arrest, attempted to retaliate against Barnett by disclosing Barnett grew and possessed marijuana. Barnett showed the officers the marijuana plants he was growing in his backyard at the time, provided the officers with a statement from his physician recommending his use of marijuana for certain medical conditions, and informed the officers he believed his cultivation and possession of the marijuana met the terms of the Compassionate Use Act of 1996 (CUA) (Health & Saf. Code, § 11362.5). Because the police did not arrest Barnett in 2001 and took no action concerning his cultivation activity until the search Fettis initiated in 2007, Barnett attacks Fettis's warrant application as materially misleading. He complains the search warrant affidavit suggested the 2001 police contact pertained to illegal marijuana activity and failed to disclose to the magistrate the medical marijuana context for Barnett's marijuana cultivation and possession.

In the present case, the prosecutor did not file charges against Barnett for possession and cultivation of marijuana arising from Fettis's August 2007 search until the end of April 2008. In the interim, in September 2007 Barnett promptly filed a claim with State Farm under his homeowners policy for the

items taken from his home in the August search. Barnett included in his claim an appraisal of $98,000 for the marijuana and marijuana plants the police seized. State Farm initially denied the claim in November 2007, but reopened the file for reconsideration in January 2008.

By February 2008, Barnett had not been charged with any crime and therefore filed a petition with the superior court for the return of his marijuana. (See Pen. Code, §§ 1538.5, subd. (a)(1)(B) [motion for return of property seized under a warrant], 1540 [return of property seized in absence of probable cause for a warrant to issue]; see also Health & Saf. Code, § 11473.5, subd. (a) [providing for destruction of drug evidence seized by law enforcement "unless the court finds that the controlled substances, instruments, or paraphernalia were lawfully possessed by the defendant"].)

On March 18, 2008, the superior court denied Barnett's property return petition on grounds he exceeded the limits permitted under California's medical marijuana laws. The superior court did not specify whether the amount Barnett possessed or the amount he cultivated was excessive but, at the time, the Medical Marijuana Program Act (MMPA) established a limit of six mature marijuana plants per medical marijuana patient or primary caregiver. (But see *People v. Kelly* (2010) 47 Cal.4th 1008, 1043 [103 Cal.Rptr.3d 733, 222 P.3d 186] [holding precise specification of permissible amounts of medical marijuana in Health & Saf. Code, § 11362.77, subd. (a), invalid as an unconstitutional legislative amendment of the initiative-adopted CUA].) In any event, Barnett did not seek reconsideration of his petition at the time to attempt to show, as he claimed, that he cultivated his 12 marijuana plants for himself and cooperatively on behalf of another qualified medical marijuana patient. (See Health & Saf. Code, § 11362.775 [authorizing qualified patients to associate "in order collectively or cooperatively to cultivate marijuana for medical purposes"].) Nor did Barnett then attempt to establish in court that his medical need for marijuana exceeded the MMPA's limits, as he claimed in correspondence with State Farm. (See Health & Saf. Code, § 11362.77, subd. (b) [authorizing amounts greater than MMPA's presumptive limits if patient obtains a doctor's recommendation].)

Two days after the court denied Barnett's petition, the CMPD destroyed Barnett's marijuana plants, rolling papers, and loose ounce of marijuana in a bulk narcotics burn. In April 2008, the district attorney charged Barnett with unlawful cultivation and possession of marijuana. In August 2008, the CMPD destroyed Barnett's freezer bags of marijuana in another narcotics burn. On October 3, 2008, State Farm made a final determination denying Barnett's theft claim.

In late October 2008, the superior court dismissed the possession and cultivation charges against Barnett on the prosecutor's motion. Barnett had

filed a motion to dismiss the charges in the interests of justice (Pen. Code, § 1385) based on proof he was a qualified medical marijuana patient, including his doctor's recommendation for specific amounts of medical cannabis exceeding the MMPA's limits. Barnett also had filed a motion to quash the search warrant or, in the alternative, to traverse the warrant and suppress evidence (Pen. Code, § 1538.5) on grounds Fettis acted in bad faith in obtaining the warrant and had not signed the warrant application. The court's dismissal of charges mooted these motions.

In December 2008, Barnett filed a new petition to have his marijuana and plants returned to him. The same judicial officer who dismissed the charges against Barnett heard the petition. The parties apparently did not inform the court that the marijuana already had been destroyed. Nor does the record reflect Barnett informed the court another judicial officer had denied his earlier petition. The record reveals no written opposition from the prosecutor to Barnett's initial petition in February 2008. When presented with Barnett's new petition in December 2008, the court requested that the prosecutor's office review it.

In the meantime, in February 2009 Barnett filed his complaint in the present action against State Farm, alleging a cause of action for breach of contract and a bad faith claim for breach of the implied covenant of good faith and fair dealing.

Back in criminal court, the prosecutor recommended against returning six of Barnett's marijuana plants because Barnett claimed only half were his, but in June 2009 the court ordered the return of all the marijuana items listed in the initial search inventory.

In the civil action, State Farm eventually filed a motion for summary judgment, which Barnett opposed. At the hearing on the motion in March 2010, the trial court concluded that "even under the broadest definition of *theft*, the facts here do not establish that plaintiff's losses are covered." (Original italics.) The court explained: "Whether the warrant should or should not have . . . issued is not viewed as dispositive, because once it existed, law enforcement personnel possessed . . . facially valid authority to enter plaintiff's home and seize the marijuana." The trial court therefore granted State Farm's motion for summary judgment and entered the judgment from which Barnett now appeals.

## II

## DISCUSSION

We review a trial court's decision granting summary judgment de novo. (*Wills v. Superior Court* (2011) 195 Cal.App.4th 143, 161 [125 Cal.Rptr.3d 1].) The interpretation of an insurance policy is also a question of law when, as here, the facts are undisputed. (*Powerine Oil Co., Inc. v. Superior Court* (2005) 37 Cal.4th 377, 390–391 [33 Cal.Rptr.3d 562, 118 P.3d 589].) Specifically, " ' "[w]hile insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply . . ." ' " and, accordingly, " '[w]e apply a de novo standard of review to an order granting summary judgment when, on undisputed facts, the order is based on the interpretation or application of the terms of an insurance policy.' " (*Id.* at p. 390.)

■ The contract provision under which Barnett rests his claim includes the terms "Theft" and "stolen," neither of which the policy defines. But as one court explained long ago, these and similar words like "robbery" and "pilferage" "are words that are well understood and . . . are used in insurance policies in their common and ordinary meaning." (*Granger v. New Jersey Ins. Co.* (1930) 108 Cal.App. 290, 294 [291 P. 698].) Thus, "the word 'theft' . . . should be given the usual meaning and understanding employed by persons in the ordinary walks of life, and should be construed as common thought and common speech now imagine and describe it." (*Ibid.*) Accordingly, theft "involves the idea of a knowingly unlawful acquisition of property; that is, a felonious taking of it . . . ." (*Ibid.*) To "steal" is similarly "a felonious taking of property." (*Id.* at p. 296.)

The requirement in the words "theft" and "stolen" of a felonious taking is critical because it is not enough to commit a "trespass" against another's right of possession, rather there must exist a criminal "intent to steal," or "*animus furandi*," that consists of "the intent, without a good faith claim of right, to permanently deprive the owner of possession." (*People v. Davis* (1998) 19 Cal.4th 301, 305 [79 Cal.Rptr.2d 295, 965 P.2d 1165] (*Davis*).)

Barnett relies on an insurance treatise that defines theft "broadly," including as "a taking of property belonging to another without authority." (10A Couch on Insurance (3d ed. 2005) § 151:14, pp. 151-22 to 151-23 (rel. 12/98) (hereafter, Couch).) Couch, however, also recognizes that "[f]or an act to constitute 'theft,' there must be a taking made with *felonious* intent on the part of the taker to deprive the owner of the property." (Couch, *supra*, § 151:15, p. 151-24 (rel. 12/98), italics added.) The common understanding of "felonious" reflects in the root of the word not just a merely unlawful act,

but one that relates to a felony and is therefore "villainous" or "criminal." (Webster's 3d New Internat. Dict. (1993) p. 836; see *Scott v. Continental Ins. Co.* (1996) 44 Cal.App.4th 24, 29 [51 Cal.Rptr.2d 566] [courts may look to dictionary definitions "to ascertain the ordinary sense of words"].)

■ Couch also suggests the requisite loss must "permanently deprive the owner" of the stolen property or, phrased differently, involve "the intentional dealing with the property of another, without his or her consent, in such a manner as to create an unreasonable risk of permanent loss . . . ." (Couch, *supra*, § 151:15, p. 151-24.) Courts may turn to relevant statutes for the plain and ordinary meaning of terms (*AIU Ins. Co. v. Superior Court* (1990) 51 Cal.3d 807, 825 [274 Cal.Rptr. 820, 799 P.2d 1253]), and the Penal Code defines theft as the felonious stealing, taking, carrying, leading, or driving away the personal property of another (Pen. Code, § 484, subd. (a)), and requires an intent to permanently deprive the owner of the object (see 2 Witkin & Epstein, Cal. Crim. Law (3d ed. 2000) Crimes Against Property, § 22, pp. 41–42; see, e.g., *People v. Brown* (1894) 105 Cal. 66, 69 [38 P. 518] ["felonious intent must be to deprive the owner of the property *permanently*" (original italics)].) A felonious "taking" occurs, for example, when the offender secures dominion and control over the property, and "carrying away" involves some slight movement of the property. (*People v. Duran* (2001) 88 Cal.App.4th 1371, 1377 [106 Cal.Rptr.2d 812] [carjacking example].)

Here, the officers' seizure of Barnett's marijuana at his home pursuant to a search warrant cannot constitute a "theft" because it was neither criminal nor, in carting the items away to an evidence locker, was there any evidence of an intent to deprive Barnett of his property permanently and in a criminal manner, rather than by due process of law. The initial taking was not a criminal act because a claim of right dispels the criminal character necessary to constitute a theft within the common meaning of the word. For example, in *Jackson v. Teachers Ins. Co.* (1973) 30 Cal.App.3d 341 [106 Cal.Rptr. 208], the court explained that police seizure of a stolen vehicle that an innocent plaintiff had purchased did not constitute a theft. As a result of the seizure, the plaintiff suffered the loss of the vehicle and the funds she paid for it, but the court held her "purchase of the car was no more a 'theft' within the meaning of the insurance policy . . . than was the subsequent taking of the vehicle by the police . . . as agents for the rightful owner." (*Id.* at pp. 344–345.)

■ Stated simply, a claim of right to take disputed property negates the criminal intent necessary for theft. (*People v. Fenderson* (2010) 188 Cal.App.4th 625, 642–643 [116 Cal.Rptr.3d 17].) Section 511 of the Penal Code codifies this principle, providing that a claim of right vitiates criminal charges where "the property was appropriated openly and avowedly, and

under a claim of title preferred in good faith, even though such claim is untenable." (See *People v. Tufunga* (1999) 21 Cal.4th 935, 952, fn. 4 [90 Cal.Rptr.2d 143, 987 P.2d 168] [claim-of-right defense applies to all theft-related offenses].) Thus, in the insurance context, "the fact that the alleged wrongdoer acted under a bona fide claim of title removes the criminal character from his or her act, and, therefore, takes the loss out of the coverage of a policy covering loss via such offenses." (Couch, *supra*, § 151:13, p. 151-22 (rel. 12/98).) Fettis and the other officers executing the search warrant did not claim title to the marijuana seized, but the search warrant issued by the magistrate vested them with the right to seize the items named in the warrant under color of law. Of course, it is inherent in a *claim* of right or title that the claimant's alleged right may later be undercut or proven inferior or unavailing once the matter is litigated, but this does not change the fact the initial taking is not criminal under California law.

Barnett emphasizes his view that Fettis acted maliciously in obtaining the warrant by omitting from his warrant application the details of the 2001 police contact, including Barnett's claim to a right of possession and cultivation under California's medical marijuana laws. Barnett relies on the fact that filing a false warrant application may constitute a criminal offense. (Pen. Code, § 170 ["Every person who maliciously and without probable cause procures a search warrant or warrant of arrest to be issued and executed, is guilty of a misdemeanor."].)

The trial court, however, properly granted summary judgment instead of requiring a trial or further proceedings to determine Fettis's mental state or other questions, such as whether a warrant would have issued based on the scale of marijuana activity at Barnett's home. Simply put, the required criminal conduct to constitute a "theft" under Barnett's homeowners policy resulting in a covered loss for "stolen" property is missing under the circumstances here, where it is undisputed the officers seized the items pursuant to a search warrant and turned them over under proper police procedure for storage as evidence. An individual officer's subjective mental state becomes irrelevant when the return of confiscated items is committed, as here, to the legal process. (Pen. Code, §§ 1538.5, 1540 [return of property procedures]; see also Pen. Code, §§ 1537–1539 [requiring officers executing warrant to provide magistrate an inventory of items taken, and providing for a court hearing to require property return].) At that point, the individual officer cannot personally and permanently deprive the homeowner of any particular article of property, as is required to constitute a theft or stealing.

Moreover, an individual officer's subjective intent does not render an otherwise facially valid warrant invalid at the time it is executed. A warrant is not a personal bill of entry for law enforcement personnel to exercise at their

discretion, but rather a court directive to execute a search. The warrant here authorized "any sheriff, policeman or peace officer in the County of Orange . . ." (capitalization and boldface omitted) to search Barnett's home, taking the matter out of Fettis's individual control. As the court observed in *People v. Fisher* (2002) 96 Cal.App.4th 1147 [117 Cal.Rptr.2d 838] (*Fisher*), "A search warrant is not an invitation that officers can choose to accept, or reject, or ignore, as they wish, or think, they should. It is an order of the court." (*Id.* at p. 1150.) Notably, Fettis did not act alone in executing the search warrant and Barnett neither alleged, nor provided any evidence of, a conspiracy among the officers to steal his property.  ■  Consequently, we must presume they acted in good faith (Evid. Code, § 664), and officers executing a facially valid warrant, as here, may rely on the warrant as lawful authority to conduct a search and seize property. (*United States v. Leon* (1984) 468 U.S. 897, 923 [82 L.Ed.2d 677, 104 S.Ct. 3405].) In any event, a warrant issued without probable cause is still effective to command a search or an arrest under color of law. (See *People v. Henderson* (1976) 58 Cal.App.3d 349, 356–358 [129 Cal.Rptr. 844] [defendant may not forcefully resist unlawful service of search warrant].)

Barnett's attempt to shift the analysis of whether a theft has occurred away from the moment of seizure to a later determination of whether *he* lawfully possessed his marijuana fails for four reasons. First, the insurance contract here identifies the covered peril *not* in terms of whether the homeowner's personal property possession is lawful, but rather in terms of an action ("theft") and, if the cause of the loss is uncertain, a probable action (the property was "stolen") committed by a third party.

■  Second and related, the third party's intent matters. As noted, it is not enough that the perpetrator commits a trespass; instead, to constitute theft, he or she must intend to steal the property. (*Davis, supra,* 19 Cal.4th at p. 305; see Couch, *supra,* § 151:15, p. 151-25 ["Intent is always a difficult element to prove . . . ," but practitioners "must be prepared to develop circumstantial evidence showing the intent of the third party to steal."].) A later judicial determination of the homeowner's right of possession may say nothing about whether the initial taking involved any criminal intent. As discussed, the requisite criminal intent to permanently and unlawfully deprive the victim of his property is absent when, as here, the officers book the property into evidence and commit the question of its return to established legal procedures.

■  Third and specific to the third party's intent, a claim of right at the time of the taking—here, the initial police seizure—dispels the criminal character required to constitute theft. As noted, a subsequent adjudication

resolving the claim of right against the claimant does not change the fact the initial taking is not criminal and does not constitute theft under California law.

Fourth and related to the specific context of this case, establishing at some future date Barnett's right of possession to his marijuana under California law did not establish police seizure of his marijuana was unlawful, let alone criminal. California medical marijuana law provides an affirmative defense against criminal prosecution, not an immunity against the execution of a search warrant. (*Fisher, supra,* 96 Cal.App.4th at pp. 1150–1152.)

Of course, officers executing a search may stray outside the parameters of the warrant, but Barnett produced no evidence that occurred here. (See, e.g., Pen. Code, § 1540 [express provision for return of property not listed in warrant].) If an officer were to pocket an item found in executing a search, retaining it for personal use, a theft might well occur at that moment, but Barnett made no such claim in his separate statement of facts opposing summary judgment. Consequently, the trial court properly concluded no theft occurred when Fettis and the other officers seized Barnett's marijuana during their search.

Turning from the initial seizure of his marijuana to its later destruction, Barnett suggests the police department acted hastily in destroying his property after the magistrate denied his initial petition for the return of his marijuana, but before criminal charges had been filed against him. It is true that language in Health and Safety Code section 11473.5, subdivision (a), suggests that legal proceedings involving "seizures of controlled substances, instruments, or paraphernalia" should be concluded or "disposed of," whether by a conviction or an acquittal or "by way of dismissal or otherwise," before law enforcement destroys those items.[2] (See also Pen. Code, §§ 1417.6 [providing for destruction of courtroom exhibits, including narcotics "unlawfully possessed"], 1536 [providing for police to retain seized items "subject to the order of the court" issuing the warrant "or of any other court in which" an offense relating to "the property or things taken is triable"].) And unlike the initial seizure under the search warrant, the destruction of Barnett's marijuana certainly deprived him of those items permanently, since no subsequent legal process could restore them. (See Pen. Code, §§ 1538.5, subd. (a)(1)(B) [motion for return of property seized under a warrant], 1540 [return of

---

[2] In full, Health and Safety Code, section 11473.5, subdivision (a), provides: "All seizures of controlled substances, instruments, or paraphernalia used for unlawfully using or administering a controlled substance which are in possession of any city, county, or state official as found property, or as the result of a case in which no trial was had or which has been disposed of by way of dismissal or otherwise than by way of conviction, shall be destroyed by order of the court, unless the court finds that the controlled substances, instruments, or paraphernalia were lawfully possessed by the defendant."

property seized in absence of probable cause for a warrant to issue].) It is also true the police destroyed Barnett's freezer bags of marijuana after the prosecutor filed criminal charges against Barnett.

■ The CMPD's destruction of Barnett's marijuana and marijuana plants, however, did not constitute a "theft" or criminal conduct that would support a claim the marijuana was "stolen" by police personnel within the meaning of the insurance contract. The disposal followed a judicial determination Barnett was not entitled to the return of his property. Nothing in the court's order denying Barnett's property return petition alerted the CMPD evidence custodian to retain the marijuana because Barnett might attempt to resuscitate the issue with a new petition. Even assuming arguendo the CMPD should have preserved Barnett's marijuana longer than it did, the property-return statutes do not specify that failure to return the petitioner's property constitutes a theft or is otherwise criminal. (See Pen. Code, §§ 1538.5, subd. (a)(1)(B), 1540; Health & Saf. Code, § 11473.5.)

True, due process under these statutes and California medical marijuana law authorize the return of a qualified patient's medical marijuana "once criminal charges against him have been dismissed." (*City of Garden Grove v. Superior Court* (2007) 157 Cal.App.4th 355, 388 [68 Cal.Rptr.3d 656].) But even assuming CMPD should have anticipated the district attorney would file criminal charges despite a lengthy delay in initiating prosecution, and the court would respond by dismissing the action, CMPD did not commit a theft of Barnett's marijuana when it relied on the court's rejection of Barnett's return petition because he exceeded lawful limits in possessing or cultivating marijuana. Relying on a facially valid judicial ruling does not amount to a theft, even assuming arguendo *that* determination was wrong.

In supplemental briefing, Barnett shifts his focus to embezzlement as a species of theft, and argues the police violated Penal Code section 504 by destroying his marijuana. That code section provides, in pertinent part: "Every officer of this state, or of any county, [or] city . . . , who fraudulently appropriates to any use or purpose not in the due and lawful execution of that person's trust, any property in his or her possession or under his or her control by virtue of that trust, or secretes it with a fraudulent intent to appropriate it to that use or purpose, is guilty of embezzlement." (Pen. Code, § 504; see *People v. Schramling* (1987) 192 Cal.App.3d 989, 994 [238 Cal.Rptr. 8] [§ 504 applies to police officers].) Barnett also suggests it is enough to "significantly interfere[]" with the owner's property to constitute embezzlement, citing *People v. Casas* (2010) 184 Cal.App.4th 1242 [109 Cal.Rptr.3d 811] (*Casas*).

■ In *Casas*, however, the defendant car salesman held no claim of right to a buyer's trade-in vehicle or cash downpayment, both of which belonged

to the dealership, but the salesman nevertheless drove the vehicle 400 miles over two days, in search of drugs that he purchased with the downpayment. (*Casas, supra*, 184 Cal.App.4th at p. 1247.) Barnett pointed to nothing similar in his separate statement of facts opposing summary judgment to suggest the police custodian that destroyed Barnett's marijuana acted fraudulently or without good faith in relying on the trial court's denial of Barnett's property return petition. As specified above in Penal Code section 504 and in the definition of embezzlement generally (Pen. Code, § 503), embezzlement requires " 'conversion of trusted funds coupled with *the intent to defraud*. [Citations.] . . .' " (*People v. Nazary* (2010) 191 Cal.App.4th 727, 742 [120 Cal.Rptr.3d 143], italics added.) But as noted near the outset of our discussion, a claim of right, as furnished here by the trial court's denial of Barnett's return petition, vitiates under the express terms of Penal Code section 511 any embezzlement charges.

In sum, the requisite criminal character necessary to constitute a theft is missing here. Specifically, Barnett produced no evidence suggesting the police in destroying Barnett's marijuana harbored any criminal intent in doing so. Indeed, Barnett's separate statement of facts opposing summary judgment did not mention CMPD's evidence custodian or seek to establish that his mental state was fraudulent, lacking in good faith, or otherwise criminal. Barnett's insurance policy provided coverage for property loss without having to prove the perpetrator's individual intent when the property's fate is unknown and "it is probable that the property has been stolen," but that was not the case here; instead, nothing about the administrative destruction of the seized evidence resembles stealing. The destruction of Barnett's marijuana therefore could not reasonably be classified as a theft, and the trial court did not err in granting summary judgment in State Farm's favor.[3]

Relying on *Lee v. Crusader Ins. Co.* (1996) 49 Cal.App.4th 1750 [57 Cal.Rptr.2d 550] (*Lee*), Barnett asserts the trial court erred in granting summary judgment on his bad faith claims for improper denial of coverage and failure to investigate his claim fully because State Farm should have waited for the outcome of his criminal proceedings before making its coverage determination. *Lee* is inapposite. There, the policyholders filed a fire insurance claim after their store was destroyed in the riots following the

---

[3] We note consumers may choose from a wide array of insurance products, including, for example, insurance that expressly precludes any claim " 'caused by . . . confiscation, . . . seizure [or] detention . . . by or under the order of any Government (whether civil, military or defacto) or public or local authority.' " (*American Alternative Ins. Corp. v. Superior Court* (2006) 135 Cal.App.4th 1239, 1243 [37 Cal.Rptr.3d 918] (*AAIC*).) The insured may also, presumably for a fee, obtain a policy endorsement specifically deleting such exclusionary language, as occurred in *AAIC*. (*Ibid.*) But the fact that the policy here had no specific language including or excluding governmental acts coverage has no bearing on whether a *theft* occurred.

acquittals in the Rodney King case, but the police advised the insurance company they suspected the policyholders committed an opportunistic arson. By law, the fire insurance policy excluded willful acts of property destruction committed by a policyholder rather than by third parties. After the policyholders were charged and acquitted of arson, they filed a bad faith claim against their insurer for delaying payment of their claim until the conclusion of the criminal proceedings. Affirming summary judgment in favor of the insurer, the court explained, "[D]eferral of the claim [was] not only reasonable, but is the only course that satisfies the policy expressed in Insurance Code section 533 which relieves an insurer from liability 'for a loss caused by the wilful act of the insured.' " (*Id.* at p. 1760.)

Unlike in *Lee*, the issue here was not whether the *policyholder's* conduct was lawful, but rather, as discussed, whether a third party's actions constituted theft within the meaning of the policy. Consequently, the court's subsequent order granting Barnett's return petition based on the lawfulness of *his* conduct is irrelevant. State Farm was not required to anticipate that result after the earlier, contrary order, or otherwise delay its determination or conduct further investigation given the facts apparent from the start: no theft occurred when the police seized Barnett's marijuana pursuant to a search warrant, inventoried the confiscated items for the court issuing the warrant, and stored the evidence for potential use against Barnett in a criminal prosecution or to be returned to him under Penal Code section 1538.5.

*Danulevich v. Hartford Fire Ins. Co.* (1980) 36 Conn.Supp. 570 [421 A.2d 559] (*Danulevich*) is distinguishable for several reasons. There, the appellate division of the trial court upheld a judgment awarding damages based on an insurer's failure to pay the insured's theft claim. The plaintiff had obtained an order for the return of his property after he established the officers "far exceeded the scope of [a] search warrant" by seizing over 2,000 items though the warrant authorized only "the seizure of two pieces of personal property suspected to have been stolen," i.e., a necklace and a snuff bottle. (*Id.*, 421 A.2d at pp. 560–561, fn. omitted.) The plaintiff testified that after he was released from jail and obtained the order for the return of his property, he "observed police officers using items of his personal property for their personal use," including "using one of his Japanese mugs to drink coffee and [he] also saw several items of his photographic equipment, his binoculars, his painting and his brass pitchers in the office of another police officer." (*Id.* at p. 561.) After a delay of more than a year and a half, the police provided an incomplete inventory of the items in their possession, failed to return "[a] substantial number of items," and in returning others, damaged them "to the extent that the plaintiff's loss for those items exceeded the $5000 limitation of coverage under the policy." (*Ibid.*)

The appellate court in *Danulevich* held: "The behavior of the police with respect to the items in their possession after the property was ordered to be returned, as well as their delay in providing any inventory of the property and their failure to return many items taken without explanation, support the finding of an intentional withholding of the property for the purpose of depriving the plaintiff thereof such as to constitute a theft within the meaning of the policy." (*Danulevich, supra*, 421 A.2d at p. 561.) The court explained "it is clear that the removal of all but two of the items taken was not sanctioned by the search warrant" and "[i]t is equally clear that the retention of the property after the court ordered it to be returned, which is the basis for the finding of theft, directly contravened a governmental order." (*Id.* at p. 562.) Suffice it to say, these facts are nothing like those on which Barnett based his claim. Here, the police conducted their search within the parameters of the warrant, seizing only the items described by the warrant, including Barnett's marijuana. The CMPD did not disregard an order to return Barnett's marijuana, but instead acted on the order denying his return petition. Additionally, the trial court in *Danulevich* did not find the police acted with a "larcenous intent" (*id.* at p. 561) in taking control of the plaintiff's property but, as discussed, criminal intent is required under California law to constitute theft (*Davis, supra*, 19 Cal.4th at p. 305). *Danulevich* therefore offers no support to Barnett's claims.

## III

## DISPOSITION

The judgment is affirmed. Respondent is entitled to its costs on appeal.

Fybel, J., and Ikola, J., concurred.